UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Edwin BROWN,
Defendant-Appellant.

No. 77–1742.

United States Court of Appeals,
Ninth Circuit.

June 1, 1978.

Rehearing and Rehearing En Banc
Denied July 24, 1978.

Jack E. Brown, (argued) Brown & Bain, P. A., Phoenix, Ariz., Ralph E. Seefeldt, Sullivan & Seefeldt, Tucson, Arizona, for defendant-appellant.

Dale A. Danneman, Asst. U. S. Atty. (argued), of Phoenix, Ariz., for plaintiff-appellee.

Before WRIGHT and HUG, Circuit Judges, and INGRAM *, District Judge.

INGRAM, District Judge.

Robert Edwin Brown appeals from his conviction after trial by court of 10 counts of violations of 15 U.S.C. § 77q(a) (counts 2, 4, 6, 7, 9, 10, 12, 14, 19, and 20 for securities

---

* Honorable William A. Ingram, United States District Judge, of the Northern District of California, sitting by designation.

fraud) and one conspiracy count in violation of 18 U.S.C. § 371 (count 34).

On appeal, Brown contends that five counts upon which he was convicted (counts 2, 4, 12, 19, and 20) are barred by the Statute of Limitations and that the trial court erred in denying his motion for judgment of acquittal with respect to those counts; that four counts (counts 7, 9, 19, and 20) were not supported by evidence sufficiently substantial to support a finding of guilt beyond a reasonable doubt; that the evidence produced by the government was insufficient to support a finding of the existence of a specific intent to sell a security or knowledge on the part of the defendant that the instruments in question were securities;[1] that the evidence adduced in support of count 10 was materially at variance with the allegations of the indictment and that the court erred in denying the motion for judgment of acquittal made upon that ground; that the court erred in denying defendant's motion for dismissal on the ground of pre-indictment delay; and, finally, that the evidence was insufficient to support the conviction of the conspiracy charge embraced within the allegations of count 34.

We disagree with each of the contentions set forth by appellant.

## I.

## FACTS

We review the facts in their aspect which is most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Mosco v. United States*, 301 F.2d 180 (9th Cir. 1962); *Castro v. United States*, 323 F.2d 683 (9th Cir. 1963).

Appellant was president of a corporation, Buckeye Mines, Inc., which had subsidiaries including Arizona-Florida Equities Corp., Arizona-Florida Development Corp., and Corona De Tucson. Appellant was president of the latter two subsidiaries.

Arizona-Florida Development Corp. (AFD) was formed in 1970 for the purpose of developing land. To develop sufficient cash flow to accomplish that purpose, land contracts purportedly sold to purchasers were factored through a Florida company, Summit Investment Co., with appellant receiving from Summit a sum equal to 80 percent of their face value. The contracts factored through Summit were sold to investors through brokers, with the result that appellant became obligated to the investors for the monthly payments provided in the contracts.

Many of the land contracts transferred in the fashion described were forged. Payments were made to purchasers of these forged instruments as if they were genuine. In other cases, purchasers were given a six month cancellation privilege. These contracts were also factored in the fashion described prior to the expiration of the six month period. In still other instances, salesmen employed by appellant and AFD were encouraged to enter into land purchase agreements which did not require them to make payments. Contracts of this category were also sold to investors. Some investors received their monthly payment checks although the contracts they had purchased had been cancelled.

After October, 1971, during which month the Securities and Exchange Commission ordered Summit to cease selling contract assignments, the sale of these ceased. Thereafter, appellant commenced selling contract assignments and promissory notes and mortgages in a development known as Corona. Under this plan, an investor received a promissory note secured by a mortgage on a lot in a development known as Lake Mead. In August, 1973, appellant's companies defaulted on their obligations and were indebted to investors in a sum exceeding six million dollars.

---

1. At oral argument, appellant urged that the court erred as a matter of law in its expression that proof of knowledge of the identity of the instruments as securities was unnecessary and that the government sufficiently carried its burden of proof of specific intent to defraud. Hence, effectively the substantiality of the evidence argument as reflected in the briefs was abandoned on appeal.

Appellant received a sentence of five years and a $5,000 fine on count 2, a sentence of five years on four additional counts to run concurrently with count 2 and with each other, and a $5,000 fine on each of the six remaining counts.

Appellant is presently out of custody on bail.

## II.

## REQUIREMENT OF SPECIFIC KNOWLEDGE THAT THE INSTRUMENTS WERE SECURITIES

In attacking his conviction of the alleged violations of 15 U.S.C. § 77q, appellant principally contends that the government's burden includes the obligation to prove beyond a reasonable doubt that appellant knew that the items sold were securities within the meaning of the act. Appellant argues that the use of the word "willful" in 15 U.S.C. § 77x, the penalty provision for violations of § 77q, imports the requirement of specific knowledge of the identity of instruments as securities.[2] We are therefore required in determining this issue to construe the word "willfully" as it appears in the context of this statute. We are mindful that "willful" and "willfully" are words of many meanings, and that their construction is often influenced by context. *Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495, 1502 (1945); *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

Appellant, relying upon *United States v. Lizarraga-Lizarraga,* 541 F.2d 826 (9th Cir. 1976), and *United States v. Klee,* 494 F.2d 394 (9th Cir. 1974), argues that the court erred as a matter of law in entering judgments of conviction upon the counts alleging violations of 15 U.S.C. § 77q in that the court did not require proof of specific intent to sell a security, or proof of specific knowledge on the part of appellant that the instruments sold were securities within the meaning of the Securities Act of 1933. Appellant contends that the word "willfully" as used in § 77x requires this proof in order to convict.

*Lizarraga-Lizarraga* finds that Congress intended the requirement of proof of specific intent by its use of the word "willful" in enacting 22 U.S.C. § 1934, which proscribes the exportation of such contraband articles as may be defined by regulation promulgated thereunder. Within the context of that statute, the court found that, absent proof of specific intent, prosecutions and convictions might ensue because of the unwitting and innocent exportation of innocuous articles that were in fact contraband because the regulations so defined them. Reference to the statute alone, without the regulations at hand, would not enlighten the unwary, and the Congressional intent was inferred from that circumstance. In *Klee,* an income tax "failure to file" case, the court approved the giving of an instruction which required proof of a knowing violation of law, as distinguished from innocent error or inadvertence, or even from reckless disregard. In sum, these cases find a requirement of the necessity of proof of specific intent in the use of the term "willful" as a necessary inference of Congressional intent to avoid the prosecution of the innocent, feckless or reckless.

In contrast, 15 U.S.C. § 77q in substance proscribes the offer or sale of a security through the use of instruments or communications in commerce or by the use of the mails where the offer or sale involves:

1) The employment of a device or scheme to defraud, or

2) The obtaining of money or property through untrue statements of material facts or the omission to state material facts, the omission of which makes statements made misleading, or

---

2. 15 U.S.C. § 77x: "Any person who willfully violates any of the provisions of this subchapter, or the rules and regulations promulgated by the Commission under authority thereof, or any person who willfully, in a registration statement filed under this subchapter, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both." [May 27, 1933, c. 38, Title I, § 24, 48 Stat. 87.]

3) Conduct amounting to fraud and deceit.

This prohibition of conduct is not a trap for the unwary because the thrust of it is fraud. Our question is whether the government is required to prove that one otherwise transgressing this statute must specifically know that the vehicle of his perfidy is a security within the meaning of the Securities Act.

■ We think that the government is required to prove specific intent only as it relates to the action constituting the fraudulent, misleading or deceitful conduct, but not as to the knowledge that the instrument used is a security under the Securities Act. The government need only prove that the object sold or offered is, in fact, a security; it need not be proved that the defendant had specific knowledge that the object sold or offered was a security.

In *United States v. Riedel*, 126 F.2d 81 (7th Cir. 1942), a prosecution for six counts of violations of 15 U.S.C. §§ 77q, 77x, and three counts of mail fraud, defendant contended that the instruments in question (trust certificates) were not securities within the meaning of the Securities Act of 1933 as amended. The court held that the question of whether or not the instrument in issue was a security was determinable from the evidence, and that where the issuance of such instruments was a part of a fraud practiced upon a purchaser, a violation of the Securities Act occurred. While the question of specific knowledge of the nature of the instruments as securities was neither raised by the parties nor addressed by the court, it is implicit in the holding that where inclusion of the instrument in question in the definition of a security in the context of a fraud case is itself a jural fact, the knowledge and belief of the defendant with respect to this is not a relevant fact requiring proof.

There is, of course, no issue in the case before us as to whether the instruments factored and assigned by appellant were securities. They are conceded to be.

In marked contrast to such holdings as *Lizarraga-Lizarraga* and *Klee*, it is interesting to note that when considering the securities acts, an eminent court has held that one may violate the rule of the Securities Exchange Commission without knowing of the existence of such rule. Judge Friendly, in *United States v. Peltz*, 433 F.2d 48 (2nd Cir. 1970), reached this conclusion in construing the provisions of § 32(a) of the Securities Exchange Act of 1934. In his consideration of the terms "willfully" and "willfully and knowingly" within the context of that section he writes:

"The language makes one point entirely clear. A person can willfully violate an SEC rule even if he does not know of its existence. This conclusion follows from the difference between the standard for the violation of the statute or a rule or regulation, to wit, 'willfully,' and that for false and misleading statements, namely, 'willfully and knowingly' . . ." (433 F.2d at 54.)

15 U.S.C. § 77x uses the term "willfully" rather than the term "willfully and knowingly."

A panel of the same court in *United States v. Schwartz*, 464 F.2d 499 (2nd Cir. 1972) construing § 32(a) of the Securities Exchange Act of 1934 and 15 U.S.C. § 78a, concluded that:

"Proof of a specific intent to violate the law is not necessary to uphold a conviction under § 32(a) of the Act, provided that satisfactory proof is established that the defendant intended to commit the act prohibited. This conclusion is in harmony with the rationale in several decisions, which have considered the kind of intent necessary to sustain a criminal conviction or the imposition of a civil penalty for that class of violations designated as 'public welfare offenses.'" (464 F.2d at 509.)

It is true that the use of the word "willful" in the context of § 32(a) is easier to determine than it is in § 77x because the former section only permits the imposition of a fine, and not imprisonment where it is shown that the actor was not aware of the statute, rule or regulation violated. How-

ever, we are satisfied that the use of the word "willful" as employed in 15 U.S.C. § 77x does not import a requirement of specific knowledge that an instrument is a security as defined in the Act.

### III.

### STATUTE OF LIMITATIONS

### (COUNTS 2, 4, 12, 19, AND 20)

■ The parties are in agreement that the applicable statute of limitations is contained in 18 U.S.C. § 3282, which is a five year period of limitations commencing to run from the time of the commission of the offense. Appellant construes the operative act prohibited by 15 U.S.C. § 77q(a), upon which the application of the statute depends, as "the offer or sale of any securities", and contends that the crime is completed when the sale is completed. Appellee would compute the running of the statute in this case from the mailing of the last purported monthly payment to the investor-purchasers of the land contracts in question.

Appellant, relying on *Carroll v. United States,* 326 F.2d 72 (9th Cir. 1963), contends that the sales in issue, which were evidenced by the transmission of written assignments of land purchase contracts to Summit, the Florida factors, and Summit's receipt of payments from individual investors in return for the assignments, took place more than five years before the return of the indictment on July 7, 1976. Appellant contends that the subsequent use of the mails by him to transmit purported monthly payments to individual investors was not a part of the "offer or sale" and that such mailings cannot constitute the starting point for the computation of the period of limitations. In *Carroll,* the mailing involved was of stock certificates evidencing the ownership of stock previously offered, accepted and paid for. There the court agreed with the appellant therein that the mailings in question satisfied the jurisdictional requirement, but did not go to the essence of the "offer or sale" proscribed by the Securities Act, and were only incidental to it. The court concluded that the completed sales transactions occurred outside the time limited by the statute and

that the charging allegations based thereon were barred.

Appellee urges that in the circumstances of this case, the time should be computed from the time of the mailing of payment checks to individual investors who purchased the instruments in question from Summit. Appellee distinguishes the *Carroll* case on the basis that there the fraud had essentially been completed before the mailings there in question occurred. Appellee contends that the mailings in the instant case were in furtherance of the fraudulent scheme and a part of a continuing fraud, and that the mailings served the purpose of lulling the recipients of the mailings into a state of passive inactivity, thus perpetuating the fraudulent scheme. Secondarily, appellee distinguishes *Carroll* on the basis that the assignments to the individual investors could not become effective until executed and that the execution thereof is, therefore, an integral part of the "offer or sale" and occurred within the period limited by the statute.

We think that the facts of this case do not fall within the holding of *Carroll.* The mailings of purported monthly payments to the purchasers of the land contracts, in our view, constitute an integral part of the transaction which the court found to be fraudulent. In analogous prosecutions under the mail fraud statute (18 U.S.C. § 1341) activities tending to lull investors, either to prevent discovery of fraud or to permit further fraudulent activities to progress unhindered, have been held to constitute a part of the execution of the fraudulent scheme and to be integral to the offense rather than incidental to it. *United States v. Ashdown,* 509 F.2d 793 (5th Cir. 1975); *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). The record before us is ample to support a like conclusion.

### IV.

### SUBSTANTIALITY OF THE EVIDENCE ON ISSUE OF SPECIFIC INTENT— (COUNTS 7, 9, 19, AND 20)

Appellant contends that the evidence in support of the named counts is not suffi-

ciently substantial to prove specific intent to defraud beyond a reasonable doubt. He relies on the testimony of Smyler, a witness produced by the government (RT 161–230) to support his contentions as to counts 6 and 9, to the effect that the face of the contracts in issue did not reveal their invalidity, and that the facts showing invalidity could not have been apparent to appellant until the contracts had already been assigned by him. (RT 205, p. 22–206 1n. 6.)

Appellee, after correctly adverting to our obligation to view the evidence in a light most favorable to the government, contends that prior to the execution and assignment of the contracts, which are involved in counts 6 and 9, the evidence amply shows appellant's knowledge of the insubstantiality of and the probability of cancellation of contracts assigned to investors.

■ The trier of fact is entitled to regard the evidence as a whole and to consider all the surrounding relevant circumstances in evaluating the presence or absence of specific intent. *Benchwick v. United States,* 297 F.2d 330 (9th Cir. 1961). The record contains evidence sufficiently substantial to support the conclusion of the trial judge.

■ As to counts 19 and 20, appellant relies on the testimony of assignees Prentice and Faircloth to the effect that they did not believe themselves to have been defrauded. This testimony, while it may be relevant to the state of mind of the witness involved, can hardly be probative on the issue of appellant's intent.

## V.

### VARIANCE

■ Appellant urges that the allegation contained in count 10, that appellant caused to be mailed to an investor a check in the sum of $397.93, is at variance with the proof relied upon to support the allegation. The evidence revealed and the Bill of Particulars specified that the check received by the investor in question was in the sum of $514.23.

This apparent discrepancy is explained adequately by the investor's testimony that she had two separate investments with appellant's corporation, and that, since both of her investments were paid by means of one check, a portion of this $514.23 check did constitute a payment of the $397.93. In any event, there is no showing of prejudice.

## VI.

### PRE–INDICTMENT DELAY

■ Appellant cites as error the trial court's ruling denying his motion to dismiss for pre-indictment delay. In order to prevail on such a motion, appellant must demonstrate actual prejudice. *United States v. Mays,* 549 F.2d 670, 677 (9th Cir. 1977). He has not done so.

## VII.

### INSUFFICIENCY OF EVIDENCE TO SUPPORT CONSPIRACY COUNT (COUNT 34)

■ Appellant challenges the sufficiency of the evidence to support his conviction for conspiracy on count 34 of the indictment. As noted previously, appellant's land contract assignments were first marketed through Summit Investment Company, but Summit was forced to cease selling the contract assignments pursuant to an SEC order. To continue financing his scheme, appellant contacted one Robert Davis, who thereafter provided a new source of revenue for appellant. In light of this subsequent arrangement, appellant alleges that, at best, the evidence shows two conspiracies, with appellant being a common factor in each; that the case thus comes within the ambit of *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) and that the proof of two conspiracies where only one is alleged is prejudicial.

Appellee counters with the contention that Davis was a new source of revenue who was utilized in the consummation of the on-going conspiracy by furnishing money with which to pay off old investors.

The trial court was justified in finding one on-going conspiracy. The testimony of Davis and that of LaPenta with respect to sales and on-going payment of investors substantially justified the conclusion of the court.

The judgments are affirmed. Let mandate issue and bail be revoked forthwith.