653 P.2d 29

STATE of Arizona, Appellee,

v.

Alfred Randal BARBER, Appellant.

No. 1 CA–CR 5205.

Court of Appeals of Arizona,
Division 1, Department A.

July 13, 1982.

Rehearing Denied Aug. 24, 1982.

Review Granted Sept. 21, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., and Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellee.

Martin & Feldhacker by William H. Feldhacker, Phoenix, for appellant.

## OPINION

OGG, Presiding Judge.

The appellant/defendant, Alfred Randal Barber, was indicted on 84 counts involving conspiracy, fraud in the sale of securities, sale of unregistered securities, sale by an unregistered security dealer, and grand theft by false pretenses. The appellant was found guilty, after a jury trial, on 45 counts and was sentenced to concurrent terms of not less than three years nor more than four years on Count I, and not less than four years nor more than six years on the remaining counts. The appellant has appealed and is currently released on bond pending the disposition of this appeal.

The appellant raises six issues for our disposition which will be considered in the order presented in appellant's opening brief.

I. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO DISMISS CERTAIN COUNTS AS BEING BARRED BY THE STATUTE OF LIMITATIONS?

The indictment against the appellant was returned by the statewide grand jury on April 10, 1979. The original indictment was amended twice during trial to dismiss certain counts. The appellant contends that 14 of the security fraud counts should have been dismissed because they were barred by the statute of limitations. The following listed contested counts, charges, and dates are set out below for clarification of this issue.

| Count | Charge | Date of Sale | Last Dividend Payment |
|---|---|---|---|
| 16 | Security Fraud | 9/5/72 | 6/14/74 |
| 17 | " " | 4/10/73 | " |
| 22 | " " | 10/2/72 | 6/28/74 |
| 23 | " " | 1/10/74 | " |
| 24 | " " | 2/21/74 | " |
| 37 | " " | 4/3/73 | " |
| 38 | " " | 4/6/73 | 8/15/74 |
| 39 | " " | 10/22/73 | " |
| 40 | " " | 10/18/73 | " |
| 41 | " " | 10/29/73 | " |
| 42 | " " | 11/5/73 | " |
| 43 | " " | 1/10/74 | " |
| 44 | " " | 2/27/74 | " |
| 45 | " " | 4/9/74 | " |

In each of the above counts, the appellant is charged with directly or indirectly selling or offering for sale fraudulent securities on the specific dates set out in the "date of sale" column.

A.R.S. § 13–106.B (repealed 1978), which applies to the time frame of this case, reads in pertinent part as follows:

> An indictment for a felony other than those mentioned in subsection A of this section shall be found, or an information filed for such felony, *within 5 years after its commission* . . . . (emphasis added)

Appellant argues that the above listed 14 security fraud counts are barred by the statute of limitations because the April 10, 1979 indictments were more than five years after the date of the sale of the securities.

The state argues that the appellant made payments allegedly representing dividends on each of the securities in question well within the statutory five-year period. The state contends the payment of these so-called dividends was an integral part of the scheme to defraud rather than events merely incidental to the security fraud.

■ A criminal statute of limitations puts a time limitation in which the state has jurisdiction to act against the accused. Such statutes are to be liberally construed in favor of the accused and against the prosecution. *State v. Fogel,* 16 Ariz.App. 246, 492 P.2d 742 (1972).

■ It is well settled that a statute of limitations begins to run when an offense is completed. *Pendergast v. United States,* 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1942).

■ In *Kann v. United States,* 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), the Supreme Court pointed out that the fraudulent scheme involved (mail fraud) was completed when the defendants received the money that was intended to be obtained by their fraud, and that certain subsequent banking transactions were merely incidental and collateral to it, and not a part of it.

The appellant relies upon *Carroll v. United States,* 326 F.2d 72 (9th Cir.1963), where the Ninth Circuit relied on *Kann* in concluding that the mailing of stock certificates

evidencing the ownership of stock previously offered, accepted and paid for did not go to the essence of the "offer or sale" proscribed by the Securities Act, and were only incidental to it. The court found that the crime was complete when the sale of the stock was executed by offer, acceptance and payment.

The Ninth Circuit distinguished *Carroll* in *United States v. Brown,* 578 F.2d 1280 (9th Cir.1978), *cert. denied,* 439 U.S. 928, 99 S.Ct. 315, 58 L.Ed.2d 322, where the defendant argued that five counts of violations of 15 U.S.C. §§ 77q(a) (securities fraud)[1] were barred by the statute of limitations. The sales in issue in *Brown* were evidenced by the written assignment of land purchase contracts, and the receipt of payments from individual investors in return for the assignments, which took place more than five years before the return of the indictment. Many of the land contracts were forged. Payments were made within the five year period to purchasers of these forged instruments as if they were genuine.

The defendant in *Brown* relied on *Carroll* in arguing that the subsequent use of the mails by him to transmit purported monthly payments to individual investors was not part of the "offer or sale" and that such mailings could not constitute the starting point for the computation of the period of limitations.

The *Brown* court found that the facts of the case before them did not fall within the holding of *Carroll.* It held as follows:

> The mailings of purported monthly payments to the purchasers of the land contracts, in our view, constitute an integral part of the transaction which the court found to be fraudulent. In analogous prosecutions under the mail fraud statute (18 U.S.C. § 1341) activities tending to lull investors, either to prevent discovery of fraud or to permit further fraudulent activities to progress unhindered, have been held to constitute a part of the execution of the fraudulent scheme and

to be integral to the offense rather than incidental to it. *United States v. Ashdown,* 509 F.2d 793 (5th Cir.1975); *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). The record before us is ample to support a like conclusion.

*United States v. Brown, supra,* 578 F.2d at 1285. *See also United States v. Jensen,* 608 F.2d 1349, 1355 (10th Cir.1979), ("the statute of limitations is no bar if there is an ongoing scheme continuing into the five year period."); *United States v. McDonald,* 576 F.2d 1350, 1357 (9th Cir.1978), *cert. denied,* 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (where payments mailed to investors concealed land fraud scheme, caused some investors to invest more money and maintained defrauding company's reputation as a reliable source of investments, statute of limitations did not begin to run until after those payments were made).

Similarly, in the case before us, the indictment alleged that appellant and his co-conspirators planned and participated in a comprehensive scheme to defraud investors. Evidence was adduced at trial which indicated that appellant's method of operation was to locate potential investors through the sale of medicare supplemental insurance policies. Once appellant and his associates ascertained that the victims had money to invest, they would offer them an opportunity to buy stock in allegedly growing and stable companies. After the victims had invested in these companies, appellant would pay them "dividends" which he represented as profits of the company. The evidence showed that these "dividends" did not come from company profits. One victim testified that by receiving regular dividend payments, she "thought it was a good company and it was responsible [and] never thought it was anything else but what they claimed it to be."

We agree with appellee that the facts of this case fall within the reasoning of *Brown.* The record before us is sufficient

---

1. The language of 15 U.S.C. § 77q(a) is similar to the language of A.R.S. § 44–1991, the securities fraud statute which is the basis of the convictions which appellant contends were barred by the statute of limitations.

to support a conclusion that the dividend payments were in furtherance of the fraudulent scheme and served the purpose of lulling the recipients into a state of complacency, thus perpetuating the fraudulent scheme. Accordingly, these payments may constitute the starting point for the computation of the period of limitations. The trial court did not err in denying appellant's motion to dismiss these counts as barred by the statute of limitations.

## II. DID THE TRIAL COURT ERR IN FAILING TO DISMISS CERTAIN COUNTS IN THE INDICTMENT AS BEING DUPLICITOUS AND MULTIPLICITOUS?

Appellant contends there was multiplicitous charging by the state on seven counts of grand theft by false pretenses and that the court erred in not dismissing such counts, which were numbered as counts 3, 7, 11, 15, 28, 32 and 36. Appellant argues that the same facts and offenses were charged as security fraud in counts 2, 4, 8, 12, 25, 29 and 33.

■ A charge may be defective as multiplicitous when it charges a single offense in multiple counts. *State v. O'Brien,* 123 Ariz. 578, 601 P.2d 341 (App.1979). In determining multiplicity the court must consider whether each count of the indictment requires proof of a fact that the other counts do not. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ Appellee argues, and we agree, that the elements of grand theft by false pretenses and the elements of security fraud differ in at least four respects:

1. A material omission is an element of security fraud, not theft by false pretenses.

2. Security fraud can involve a misrepresentation concerning a future fact, theft by false pretenses requires misrepresentation of a past or existing fact.

3. In security fraud the victim does not have to transfer anything of value, whereas theft by false pretenses requires reliance upon the misrepresentation and loss.

4. A security is a required element in security fraud, not of theft by false pretenses.

We find security fraud and theft by false pretenses to be separate and distinct crimes. Consequently, prosecution of one does not preclude prosecution for the other. The contested counts raised in this issue were not multiplicitous.

Appellant further contends that the security fraud counts numbered 16, 17, 22, 23, 24, 37, 38, 39, 40, 41, 42, 43, 44 and 45 were duplicitous. Appellant argues that each of these counts alleges two separate and distinct crimes in each count, to-wit: (1) a fraudulent sale of a security on or about a certain date; and (2) a subsequent and continuing course of conduct designed to defraud the victim and others in the future.

■ A duplicitous indictment is one that charges two or more distinct offenses in a single count, thereby preventing the jury from deciding each offense separately and concealing from the defendant and the court the specific charge or charges on which the jury found the defendant guilty. *United States v. Murray,* 618 F.2d 892 (2d Cir.1980). The rationale underlying the prohibition against duplicitous indictments is to give notice to the defendant of exactly what charges he must defend against and to avoid the consequences of the inability of the jury to indicate which way they are voting on each of the charges. *Dunn v. State,* 50 Ariz. 473, 73 P.2d 107 (1937); *Kimble v. State,* 539 P.2d 73 (Alaska 1975).

■ From our review of the record in each of the counts alleged to be duplicitous, we find that only one crime has been charged, that of security fraud. The allegations complained of, regarding the subsequent "dividend" payments, do not allege an additional crime but in fact constitute a part of the execution of the fraudulent scheme and are integral to the offense charged. *See United States v. Brown, supra.* We do not find the 14 contested security fraud counts to be duplicitous.

■ It is further argued that count 2 is also duplicitous in making an allegation that the defendant defrauded nine persons involving numerous acts over an extended period of time. These same allegations are realleged as to each individual victim in subsequent counts.

The fact that count 2 contains a factual description of the fraudulent scheme and that there is reference to this description in subsequent counts does not make the count duplicitous. There is no error in giving a defendant more information than is statutorily required in the indictment. We do not find count 2 to be duplicitous.

## III. DID THE TRIAL COURT ERR IN GRANTING THE STATE'S MOTION TO AMEND AS TO COUNTS 4, 5, 6 and 7 OF THE SECOND AMENDED INDICTMENT?

At the close of all the evidence, the state moved to amend counts 4, 5, 6 and 7 of the second amended complaint to conform to the evidence. All of these counts involved transactions with Walter J. Cox. The evidence offered at trial was that Walter J. Cox had loaned $7,000 to National Hospital Plan Insurance Agency, Inc. and not to National Hospitalization, Inc. as charged in the indictment. Over the appellant's objection, the court allowed the amendments to conform to the evidence. Appellant contends it was error for the court to permit the amendment of a fact that had been previously determined by the grand jury without presenting it back to that body for approval. Based upon this error, the appellant contends the trial court should have granted appellant's motion for a directed verdict or judgment of acquittal as to all counts involving Walter J. Cox.

Rule 13.5(b), Arizona Rules of Criminal Procedure, 17 A.R.S., provides in pertinent part as follows:

The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

■ A defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way. *State v. Bruce,* 125 Ariz. 421, 610 P.2d 55 (1980). In determining the propriety of an amendment to an indictment to conform to the evidence, this court must consider whether the allowing of that amendment would violate two important rights of the defendant, to-wit: (1) the defendant must have been put on notice of the charges against him with an ample opportunity to prepare to defend against them; and (2) the acquittal of the amended charge must provide a double jeopardy defense to a subsequent prosecution on the original charge. *State v. Phelps,* 125 Ariz. 114, 608 P.2d 51 (App.1979). In the *Phelps* case, this court held that the substitution of the name of the brokerage firm for that of the stockbroker in the indictment in order to conform the indictment to the evidence would not prejudice the defendant because the defendant was fully aware of the transaction, the applicable charge, and the available defenses.

■ Here we find that the amendment did not change the nature of the offense charged, nor did it prejudice the appellant in any way. The factual amendment to the indictment to reflect the correct name of the corporation does not change the nature of the substantive charge. The evidence before the grand jury was consistent with the evidence presented at trial and the appellant had access to all such information prior to trial. The transaction which gave rise to the charges set forth in counts 4, 5, 6 and 7 was described with particularity both at the grand jury proceedings and in count 1. It appears the defendant was fully aware of the charge against him and had ample opportunity to prepare his defense.

The amendments granted did not limit the appellant's defense of double jeopardy for the entire record of the case would be available to bar a subsequent prosecution

for any possible charges pertaining to a Walter Cox loan. A double jeopardy defense is not limited to the four corners of the indictment. *State v. Phelps, supra.* We find no prejudice to the appellant in the amendments granted by the trial court.

### IV. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY ON THE STATUTORY EXEMPTIONS CONTAINED IN A.R.S. §§ 44–1843 and 44–1844?

Appellant argues that it was error for the trial court to fail to instruct the jury on the statutory exemptions set out in A.R.S. § 44–1843, which defines what exempt securities are, and § 44–1844, which defines what exempt transactions are. In addition, he claims that it was incumbent upon the state to prove that the notes involved were not exempt securities and that the transactions were not exempted by law. He further alleges that the state's failure to present evidence on this issue is also error.

■ To begin our analysis of this issue, we first note that the state is not required to prove that the securities and transactions were not exempted by law. A.R.S. § 44–2033 provides:

> In any action, civil or criminal, when a defense is based upon any exemption provided for in this chapter, the burden of proving the existence of the exemption shall be upon the party raising the defense, and it shall not be necessary to negative the exemption in any petition, complaint, information or indictment, laid or brought in any proceeding under this chapter.

This statute clearly places the burden upon the appellant to prove the existence of any exemption he deemed applicable to this case. *State v. Baumann,* 125 Ariz. 404, 610 P.2d 38 (1980).

■ We further note that there is no competent evidence in the record to support an instruction on any of the exemptions listed in §§ 44–1843 and 44–1844, with the exception of the limited exemption for certain negotiable notes or commercial paper. This exemption was covered by defense instruction number 1 which was given by the court as modified.[2]

It is the opinion of this court that the trial court did not err in the failure to give instructions covering the exemptions of §§ 44–1843 and 44–1844.

### V. WAS THE EVIDENCE PRESENTED BY THE STATE SUFFICIENT TO ALLOW THE CASE TO GO TO THE JURY?

In reviewing the transcript to determine an issue raised as to the sufficiency of the evidence, this court must consider the evidence in the light most favorable to sustaining the verdict of the jury, and all reasonable inferences must be resolved against the appellant. *State v. Gaines,* 113 Ariz. 206, 549 P.2d 574 (1976).

■ We have reviewed the transcript in such a light and find there was competent evidence to permit the trial court to submit the case to the jury. We find no error here.

### VI. WAS THE APPELLANT GIVEN COMPETENT LEGAL REPRESENTATION THROUGHOUT THE ENTIRE TRIAL?

■ Appellant has requested his present appellate counsel to raise the issue relative to his allegation that he was not given adequate legal representation at the trial level. The standard in Arizona for the determination of such an issue is whether the representation by the defendant's lawyer was so ineffective that the proceedings were reduced to a farce, sham, or mockery

---

**2.** This instruction as given reads as follows: The provisions of the law pertaining to the crimes of sale of unregistered securities and sale by an unregistered security dealer or salesman do not apply to negotiable promissory notes or commercial paper, if the issue of such notes or paper matures in not more than twelve months from date of issue and is issued within three months after the date of sale, and if such sale arises out of current transactions or the proceeds of which have been or are to be used for current transactions.

of justice. *State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981). The Ninth Circuit Court of Appeals has adopted a more comprehensive test which mandates that the legal representation conform to a "reasonably competent" standard. *See Cooper v. Fitzharris,* 586 F.2d 1325, 1330 (9th Cir.1978), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

Using either of the above standards, it is the opinion of this court that the appellant received competent legal representation throughout this long and complex trial.

The convictions and sentences are affirmed.

CORCORAN and FROEB, JJ., concur.