NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KASEY MARKEITH HAYES, *Appellant*.

No. 1 CA-CR 13-0304
FILED 6-30-2015

Appeal from the Superior Court in Maricopa County
No.  CR2011-156151-001 DT
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

The Nolan Law Firm, PLLC, Mesa
By Todd E. Nolan, Cari Nolan, Vicki A.R. Lopez
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

**B R O W N**, Judge:

¶1            A jury convicted Kasey Markeith Hayes of sexual conduct with a minor and molestation of a child, both dangerous crimes against children.  The trial court sentenced him to twenty years' imprisonment for sexual conduct with a minor and a consecutive term of ten years' imprisonment for molestation of a child.  On appeal, Hayes argues the evidence was insufficient to support his convictions.  He further argues the court erred when it amended the indictment during trial and when it precluded the admission of evidence.  Finally, Hayes argues the prosecutor engaged in misconduct.  For the reasons that follow, we affirm Hayes's convictions and sentences.

**DISCUSSION**

**A.      Sufficiency of the Evidence**

¶2            To give context to the other issues raised on appeal, we first address the sufficiency of the evidence.  As charged in this case, a person commits sexual conduct with a minor if the person intentionally or knowingly engages in sexual intercourse with a person under fifteen years of age. Ariz. Rev. Stat. ("A.R.S.") § 13-1405(A) (2010).  "'Sexual intercourse' means penetration into the penis, vulva or anus by any part of the body or by any object[.]"   A.R.S. § 13-1401(3).  As further charged in this case, a person commits molestation of a child if the person intentionally or knowingly causes a person to engage in sexual contact with a child who is under fifteen years of age.  A.R.S. § 13-1410(A) (2010).  "'Sexual contact' means any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact."  A.R.S. § 13-1401(2).

¶3            Hayes argues the evidence was insufficient to support his convictions because the victim fabricated her claims and had no credibility, the testimony of a nurse who examined the victim was untrustworthy and

inaccurate, and the deoxyribonucleic ("DNA") evidence was unreliable. We disagree.

¶4        "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (citation omitted). We review the trial record to determine whether substantial evidence supports the convictions and view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Cox*, 217 Ariz. 353, 357, ¶ 22, 174 P.3d 265, 269 (2007) (internal quotations and citation omitted). "Substantial evidence is evidence that 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *Id.* (citation omitted).

¶5        In our review of the record, we resolve any conflict in the evidence in favor of sustaining the verdict. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). We do not weigh the evidence, however. *See id.* The weight of the evidence and the credibility of the witnesses are matters to be determined solely by the jury. *State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995). Further, we do not determine what a reasonable jury should have believed. *State v. Bronson*, 204 Ariz. 321, 328, ¶ 34, 63 P.3d 1058, 1065 (App. 2003).

¶6        At the time of the incident, Hayes had been living with the fourteen-year-old victim and the victim's mother. Late one evening, while the mother was out of the home, Hayes knocked on the victim's bedroom door and asked to come inside. Hayes entered the bedroom wearing only his underwear. While the victim sat on her bed, Hayes called her names and used vulgar language. Hayes then placed the victim on her back and laid down beside her. Hayes slid his hand in the victim's shorts and placed two fingers inside her vagina. The victim testified that as he did so, Hayes moved his fingers in a manner that scratched, irritated, and caused her pain. Hayes then grabbed the victim's hand and put it on his penis. The victim eventually got up from the bed and ultimately left the house.

¶7        A "sexual assault nurse examiner" examined the victim the following morning and found "redness in the posterior aspect of the [victim's] hymen" as well as a "blood blister" directly behind the redness and on the floor of the victim's vagina. The nurse believed the redness occurred at the same time as the blood blister. She further opined that the blood blister was a result of trauma, not infection. The nurse testified these findings were consistent with the victim's explanation of digital

penetration. Both the redness and the blister were gone by the time of a follow-up examination a week later.

¶8 A criminalist testified that semen and/or sperm were found on a pillow and a comforter on the victim's bed. A DNA analyst who tested the DNA in the material found on both the pillow and comforter testified it matched Hayes's DNA. The analyst explained that the "sperm fraction" of the DNA on the pillow matched Hayes at all fourteen locations, and at thirteen locations of the comforter.

¶9 Although Hayes argues the nurse's testimony was untrustworthy, inaccurate and "subjective," he cites no evidence from the record and offers only his own opinions to support his argument. Further, while he does refer us to a number of articles from the internet, Hayes did not offer those articles nor any of the information contained in those articles into evidence or otherwise reference them at trial. We will not consider materials outside the record on appeal, *State v. Schackart*, 190 Ariz. 238, 247, 947 P.2d 315, 324 (1997), nor will we consider any "extraneous" factual assertions not found in the record on appeal. *State v. Fassler*, 108 Ariz. 586, 596, 503 P.2d 807, 817 (1972).[1]

¶10 Hayes also contends the quality and quantity of the DNA samples obtained were not sufficient, and that the samples were "degraded, contaminated, mixed-source, and low-copy-number samples." To the contrary, the jury heard testimony that the samples were of a sufficient, uncontaminated quantity and quality to sample, test, analyze and conduct statistical analyses sufficient to match Hayes to each sample.[2] Finally, Hayes argues there was an insufficient chain of custody for the DNA evidence. Authentication based on a chain of custody, however, need only show "continuity of possession" and need not disprove every possibility of tampering. *State v. McCray*, 218 Ariz. 252, 256, ¶ 9, 183 P.3d 503, 507 (2008). To the extent evidence of the chain of custody may be incomplete or in

---

[1] Hayes also references Arizona Rule of Evidence 702 regarding expert witnesses but presents no issue regarding the foundation for the nurse's testimony or her qualifications as an expert. He only attacks the accuracy of the nurse's opinions and testimony.

[2] The DNA analyst noted that the sample from the pillow contained a minor component that was not from Hayes. The analyst testified the component could have been from another person or may have been an "artifact" from testing. Regardless, it did not affect the analysis.

conflict with other evidence, such "concerns go to the weight rather than the admissibility of the evidence." *Id*. at 257, ¶ 15, 183 P.3d at 508; *see also State v. Morales*, 170 Ariz. 360, 365, 824 P.2d 756, 761 (App. 1991) (explaining that a flaw in the chain of custody goes to weight, not admissibility). The jury heard more than sufficient evidence to establish the chain of custody for the DNA evidence.

**¶11**        Given the evidence outlined above, we conclude substantial evidence exists in the record supporting the jury's verdicts.

### B.        Amendment of the Indictment

**¶12**        Count 2 of the indictment originally alleged that Hayes committed molestation of a child when he engaged in sexual contact with the victim on or about the 26th day of September, 2010. On the sixth day of the ten-day trial, the State orally moved to amend Count 2 to allege that (1) Hayes committed molestation of a child when he engaged in *or caused the victim to engage in sexual contact*; and (2) the events occurred "on or between" September 26th and 27th. Hayes informed the trial court he had no objection to the amendment and the court granted the State's motion. The court also ordered the State to prepare an amended indictment and present it to the court before the end of trial.

**¶13**        Despite informing the court he had no objection to the amendment, Hayes now argues the trial court erred when it granted the State's motion to amend the indictment because the addition of the language "causing another to engage in sexual contact" changed the elements necessary to prove the crime of molestation of a child.[3] The failure to raise an issue at trial waives all but fundamental error. *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24, 115 P.3d 601, 608 (2005). Even if a

---

[3]        At oral argument, Hayes argued for the first time that amendment of the dates listed in the original indictment amounted to fundamental error because it impaired his ability to present expert witness testimony challenging the prosecution's timeline of events through DNA evidence. An argument raised for the first time at oral argument is generally waived. *State v. Murdaugh*, 209 Ariz. 19, 26, ¶ 29, 97 P.3d 844, 851 (2004). Even assuming the issue was not waived, consistent with the reasons stated herein, no fundamental error occurred.

defendant establishes fundamental error, the defendant must still demonstrate the error was prejudicial. *Id*. at ¶ 26.

¶14        "The trial court has considerable discretion in resolving motions to amend an indictment." *State v. Delgado*, 174 Ariz. 252, 254, 848 P.2d 337, 339 (App. 1993). The court may correct a technical or formal defect in an indictment whenever the defect is identified. *State v. Bruce*, 125 Ariz. 421, 423, 610 P.2d 55, 57 (1980). A defect is technical or formal if the amendment does not change the nature of the offense or prejudice the defendant. *Id.* In our review of the propriety of an amendment of an indictment, we consider whether the defendant was given sufficient notice of the charges and ample opportunity to prepare a defense, as well as whether acquittal of the amended charge provides double jeopardy protection from subsequent prosecution on the original charge. *State v. Barber*, 133 Ariz. 572, 577, 653 P.2d 29, 34 (App. 1982).

¶15        We find no error, fundamental or otherwise. First, "the trial court can amend an indictment upon an oral motion by the state if the defendant does not object." *State v. Schwartz*, 188 Ariz. 313, 319, 935 P.2d 891, 897 (App. 1996). Hayes concedes on appeal that he gave "consent" to the amendment. Therefore, nothing more was required to permit the court to amend. Second, the amendment did not change the nature of the offense of which the State planned to convict Hayes, nor did it change the defense Hayes planned to present to that offense. Despite the initial wording of the indictment, Hayes had notice that the State's theory of prosecution for Count 2 was that on or about September 26, 2010, Hayes caused the victim to engage in sexual contact when he grabbed her hand and placed it on his penis. The victim told the officer who responded the date of the incident that Hayes grabbed her hand and tried to force her to engage in masturbatory contact. In a later forensic interview, the victim stated that Hayes grabbed her hand and placed it on his penis. At a settlement conference seven months before trial, the State informed the court that it would prove Hayes committed molestation of a child by proving he grabbed the victim's hand and placed it on his penis.

¶16        There was never any other allegation or understanding regarding how Hayes committed Count 2, which the trial court recognized. Perhaps most importantly, in the joint pretrial statement filed a week before trial, Hayes and the State agreed that the State alleged Hayes committed molestation of a child when he "grabbed [the victim's] hand and put it on his penis in an attempt to have her masturbate his penis." Finally, the State informed the jury that it would prove Hayes "grabbed [the victim's] hand and placed it on his penis in an attempt to get her to rub him." Hayes did

6

not object or otherwise claim surprise at any alleged change in the State's theory of prosecution for Count 2. Instead, as Hayes informed the court at the beginning of trial, his defense has always been "it never happened, period." Therefore, the amendment did not deprive Hayes of sufficient notice of the charges nor did it deprive him of the opportunity to thoroughly investigate, prepare, and present his defense.[4]

¶17 Finally, Hayes presents a cursory argument that error arose when the State did not file the amended indictment with the clerk of the court until after the jury reached its verdict. Hayes did not raise this issue below and cites no authority for his assertion. It is true that the written order that officially amended the indictment is dated October 11, 2012, the day after the jury reached its verdicts, and is marked as electronically filed on October 12. Regardless of the date of that order or the date it was filed, the trial court granted the State's oral motion to amend on October 2, and Hayes knew the amended language as of that date. Further, the State announced in court the next morning that it had electronically filed the amended indictment and then provided additional hard copies for everyone. Finally, the court instructed the jury regarding molestation of a child based on the language of the amended indictment. No conceivable harm arose from the failure of the amended indictment to appear in the clerk's records for several more days, and the reasons why that occurred are irrelevant.

###   C.   Denial of Hayes's "Motion for Admission of A.R.S. § 13-1421 Material"

¶18 Hayes filed a pretrial motion to admit evidence pursuant to A.R.S. § 13-1421, known colloquially as the "rape shield" statute. Hayes sought to admit evidence that in 2006, when the victim was ten years old, the victim told Hayes's mother that an unidentified girl who lived upstairs was being molested. Hayes further sought to admit evidence that during that period, the victim asked Hayes's mother on more than one occasion whether she could hear the girl upstairs being molested. Each time, Hayes's mother listened but could hear nothing. Hayes argued the evidence was admissible pursuant to A.R.S. § 13-1421 as evidence the victim falsely

---

[4]     Hayes's reliance on *State v. Johnson*, 198 Ariz. 245, 8 P.3d 1159 (App. 2001) is unavailing. In *Johnson*, this court found the amendment in that case "greatly impaired" the defendant's ability to prove his defense. *Id*. at 248, ¶ 12, 8 P.3d at 1162. As noted above, the amendment in this case did not impair Hayes's ability to investigate, prepare, or present his defense.

accused someone of molesting another child in the past and as evidence of motive and intent to accuse Hayes of the instant offenses. On appeal, Hayes presents additional arguments that the evidence was also relevant to show the victim knew about the subject of molestation at an inappropriate age and that she had a "fixation with the allegation."[5]

**¶19**      The trial court denied that portion of Hayes's motion, finding that the evidence was not of a type contemplated by A.R.S. § 13-1421(A) and was not admissible pursuant to any provision of A.R.S. § 13-1421(A). The court further held the evidence was irrelevant to any issue the jury would decide at trial, and that if the evidence had any marginal relevance, any probative value was substantially outweighed by the danger of confusing the jury and introducing extraneous issues.[6]

**¶20**      We review a trial court's evidentiary rulings for a clear abuse of discretion. *State v. Amaya-Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990). Further, the court "has considerable discretion in determining whether the probative value of the evidence is substantially outweighed by its unfairly prejudicial effect." *State v. Gilfillan*, 196 Ariz. 396, 405, ¶ 29, 998 P.2d 1069, 1078 (App. 2000).

**¶21**      We find no abuse of discretion. First, the evidence Hayes proffered was not admissible pursuant to any provision of A.R.S. § 13-1421(A). Section 13-1421(A) permits the admission of "instances of the victim's prior sexual conduct" in limited situations, and then only if the trial court finds the evidence is relevant, material to a fact in issue, and the probative value is not outweighed by the danger of unfair prejudice or inflammation of the jury. A.R.S. § 13-1421(A). The evidence at issue was not evidence "of the victim's prior sexual conduct." Further, a trial court may admit such evidence only if the evidence is one of five enumerated types of evidence. In addition to not being "an instance of the victim's prior sexual conduct," the evidence at issue was not admissible pursuant to

---

[5]      We do not consider evidentiary theories raised for the first time on appeal. *State v. Spreitz*, 190 Ariz. 129, 145, 945 P.2d 1260, 1276 (1997).

[6]      In the same motion, Hayes sought to admit evidence that the day before the victim alleged she was molested by Hayes, she reported to her grandmother that she had been sexually molested by a different person approximately seven years earlier. The trial court determined this evidence was admissible pursuant to A.R.S. § 13-1421(A)(3) (addressing "[e]vidence that supports a claim that the victim has a motive in accusing the defendant of the crime").

subsection (1) because it was not evidence of the victim's past sexual conduct with anyone, let alone Hayes. *Id.* It was not admissible pursuant to subsection (2) because it was not evidence of specific instances of sexual activity to show the source or origin of semen, pregnancy, disease or trauma. *Id*. It was not admissible pursuant to subsection (3) because it was not evidence that the victim had a motive to accuse Hayes of the instant offenses. *Id.* It was not admissible pursuant to subsection (4) because the prosecutor never placed the victim's prior sexual conduct in issue. *Id.* Finally, it was not admissible pursuant to subsection (5) because it was not evidence the victim made a false accusation of sexual misconduct against someone else. *Id.* There was no evidence the victim's statement was false or that law enforcement agencies did not investigate the alleged incident.

**¶22**        Without any analysis, Hayes further argues that the trial court improperly excluded the victim's statement about another girl being molested pursuant to Arizona Rule of Evidence ("Rule") 403 and that the evidence should have been admitted because it is relevant to demonstrate the victim's pattern of molestation allegations and age-inappropriate sexual knowledge. Otherwise relevant evidence is subjective to exclusion "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Ariz. R. Evid. 403. Balancing the Rule 403 factors, the trial court held:

> As an initial matter, the Court sees no relevance to the proffered evidence. Here, there is no evidence that the victim's statements are false or imagined. Without such evidence, the victim's statements about another girl being molested are not relevant. Even if the statement was somehow relevant, the probative value of the statement is minimal compared to the potential of confusion and the introduction of extraneous issues. The relevance of the evidence, if any, is outweighed by the prejudicial confusion that could result from admission of the evidence.

As the trial court indicated in its order denying Hayes's motion, the victim's reports of sexual abuse against another girl occurred four years before the victim's allegations against Hayes and were not substantiated because no investigation into the allegation was ever made. The trial court did not abuse its discretion when it held the evidence was irrelevant and that any theoretical relevance was marginal and outweighed by the danger of confusing the jury. *See State v. Cooperman*, 232 Ariz. 347, 351, ¶ 17, 306 P.3d 4, 8 (2013) ("Trial courts have considerable discretion in deciding whether to exclude evidence under [Rule 403].").

### D. Prosecutorial Misconduct

¶23 As the final issue on appeal, Hayes argues the prosecutor engaged in misconduct "designed to elicit testimony that was inaccurate, speculative, and misleading[.]" He further argues the prosecutor engaged in misconduct throughout his cross-examination of Hayes.

¶24 Prosecutorial misconduct is not merely "legal error, negligence, mistake, or insignificant impropriety." *Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984). Prosecutorial misconduct is "intentional conduct which the prosecutor knows to be improper and prejudicial." *Id.* Because Hayes raised no objections to the alleged misconduct, we review for fundamental error. *State v. Wood*, 180 Ariz. 53, 66, 881 P.2d 1158, 1171 (1994). In our determination of whether a prosecutor's conduct amounts to fundamental error, we focus our inquiry on the probability the conduct influenced the jury and whether the conduct denied Hayes a fair trial. *Id.*

¶25 In his first two claims of misconduct, Hayes argues the prosecutor asked the nurse questions that allowed her to make "outlandish claims" about blood blisters and asked the DNA analyst questions that allowed him to engage in speculation. Hayes has failed to establish there was any misconduct because, as with his claims of insufficient evidence, Hayes supports his argument with nothing more than his own evaluation of the credibility of the witnesses and their testimony as well as his own interpretation of the quality and correctness of the medical and scientific evidence. Further, that these two witnesses answered questions in a manner Hayes did not like is not prosecutorial misconduct, but simply Hayes's own displeasure with the witnesses' answers.

¶26 As the third claim of prosecutorial misconduct, Hayes argues the prosecutor also misrepresented the DNA analyst's testimony and told the jury that nobody else could have matched the DNA profiles found on the pillow and the comforter. The portion of the record that Hayes refers us to in no way supports this claim and our review of the record does not reveal that the prosecutor ever made such a claim. The portion of the record Hayes relies on shows only that the DNA analyst answered questions regarding his calculations of how frequently the DNA profile found on the comforter would occur in Caucasians, African-Americans and Hispanics.

¶27 Hayes also argues the prosecutor improperly claimed it was "impossible" for Hayes to hear the victim on the telephone at a time when he claimed he could. The victim testified that the night of the incident, she

used a cordless telephone from the kitchen to have a conversation with her boyfriend while in her bedroom. After she finished the conversation, Hayes knocked on the bedroom door and asked to come inside. Hayes told a detective that the night of the incident, he woke when he heard the signal of a telephone off the hook in another room. Hayes claimed he went to the other room and hung up the phone, then went into the hallway and stood outside the victim's bedroom door while he listened to what sounded like the victim engaging in "phone sex." Hayes told the detective he knocked on the victim's door and asked her if she was okay, then went back to his room. Hayes also told the detective that the only cordless phone in the house was broken.

¶28          The question Hayes complains of came during the redirect examination of the detective. The detective again testified that Hayes claimed he heard what sounded like the victim engaging in phone sex. The prosecutor asked the detective, "So if [Hayes] just hung up the phone, and there's no other phones in the house, that would be impossible; correct?" The detective responded, "Correct." We find no misconduct because the question was not improper. If the cordless phone was broken, Hayes had just hung up the only operating telephone in the house and there was no evidence the victim had access to another operating telephone; it was therefore legitimate to question whether it was "impossible" for Hayes to have heard the victim engaging in what sounded like phone sex when there was no operating telephone in her room.

¶29          Finally, Hayes argues the prosecutor's cross-examination of Hayes was abusive, argumentative, and harassing. With the exception below, rather than identify specific instances of alleged misconduct and argue why that conduct requires reversal, Hayes simply directs us to the entire cross-examination. Further, Hayes does not explain how any of the cross-examination was abusive, argumentative, or harassing. Hayes has, therefore, failed to sufficiently present the issue for appellate review. *See State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). Even so, we have reviewed the record and find no prosecutorial misconduct.

¶30          The one arguable exception to Hayes's failure to properly present the issue for review is that he asserts the prosecutor's unidentified misconduct was evidenced by the fact that the trial court had to intervene "repeatedly to interrupt the prosecutor's badgering of the witness." Rather than identify and address the specific court intervention or the conduct the court addressed, or evaluate that conduct in the context of any applicable law, Hayes simply makes his assertion and cites four pages of the record that contain three instances where the court intervened. Assuming this was

sufficient to present this issue for appellate review, we find nothing that rises to prosecutorial misconduct. In the first instance, the prosecutor made a statement rather than immediately ask another question after Hayes gave his answer. The court interjected, "Counsel, ask a question." In the second instance, the court commented that one of the prosecutor's questions was argumentative, even though Hayes made no objection. In the third and final instance, Hayes answered one of the prosecutor's questions by explaining how the victim's pillow was not always in the victim's bedroom, others in the house sometimes used the pillow, and the victim would then take it back. The prosecutor responded, "Conveniently?," to which the court *sua sponte* instructed the jury to disregard the comment and instructed the prosecutor to ask questions and not make editorial comments. While the final comment by the prosecutor was improper, none of this conduct rose to prosecutorial misconduct and none of the conduct otherwise improperly influenced the jury or denied Hayes a fair trial, whether considered individually or cumulatively.[7]

**CONCLUSION**

¶**31**        Based on the foregoing, we affirm Hayes's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[7]        At the end of this section of his opening brief, Hayes also presents a laundry list of general claims of misconduct without any citation to the record. We do not address those claims because Hayes has failed to adequately present them for review. *See Carver*, 160 Ariz. at 175, 771 P.2d at 1390; *Moody*, 208 Ariz. at 451-52, ¶ 98, 94 P.3d at 1146-47.