848 P.2d 337

**STATE of Arizona, Appellee,**

v.

**Theodore R. DELGADO, Appellant.**

**No. 1 CA–CR 90–1612.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 9, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Helene F. Abrams, Deputy Public Defender, Phoenix, for appellant.

## OPINION

### CLABORNE, Judge.

Appellant Theodore Delgado ("defendant") appeals from convictions for one count of attempted second-degree murder and five counts of aggravated assault and the sentences imposed. For the reasons discussed below, we reverse the convictions and remand for a new trial.

## PROCEDURAL BACKGROUND

Defendant was indicted on one count of attempted second-degree murder, a class 2 felony, six counts of aggravated assault, class 3 felonies, one count of burglary in the second degree, a class 3 felony, and one count of reckless endangerment, a class 6 felony. The state filed an allegation of *Hannah*[1] prior and/or repetitive convictions, an allegation of dangerous nature of felony on counts one through seven, an allegation that defendant was on probation when the offenses were committed, and an allegation of a prior felony conviction for aggravated assault. The state subsequently dismissed the counts in the indictment for burglary and endangerment and the allegation of dangerous nature of felony as to count one. As part of a stipulation, it also dismissed the allegation pursuant to Ariz.Rev.Stat.Ann. ("A.R.S."), section 13–604.02(B) (1989).

The matter was tried to a jury and defendant raised the defense of insanity. Defendant was found guilty of attempted second-degree murder and five counts of aggravated assault, dangerous offenses, and was found not guilty on one count of aggravated assault. Defendant was given aggravated sentences of fifteen years on each count, all sentences to be served concurrently. For purposes of sentencing, count two for aggravated assault was treated as a *Hannah* prior conviction of count one for

---

1. *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980).

attempted second-degree murder. Defendant raises the following issues on appeal:

1. Did the court abuse its discretion in granting the state's motion to amend count one of the indictment to conform to the evidence presented at trial?

2. Did the court abuse its discretion in precluding a defense witness from testifying during the defense case-in-chief or in surrebuttal?

3. Did the court commit fundamental error in instructing the jury on attempted second degree murder?

4. Did the court abuse its discretion in reading a portion of the video-taped deposition of the state's expert witness to the jury and in permitting the jury to refer to a transcribed copy of the deposition?

5. Did the prosecutor's comments during closing argument constitute fundamental error?

6. Did the court err in sentencing Defendant as a repetitive offender on count one of the indictment?

## DISCUSSION

A. *Amendment of Count One of the Indictment*

Count One of the original indictment charged that:

> Theodore R. Delgado, on or about the 1st day of November 1989, without premeditation, under circumstances manifesting extreme indifference to human life recklessly engaged in conduct which created a grave risk of death and thereby attempted to cause the death of Anita Espinosa in violation of A.R.S. 13–1104, 13–1101, 13–710, 13–702, 13–801 and 13–812.

After the close of evidence, while formulating jury instructions, the court observed that count one of the indictment was defective because it alleged that defendant attempted to recklessly commit an act and that this is not recognized under Arizona law. *See State v. Adams,* 155 Ariz. 117, 745 P.2d 175 (App.1987). Defendant moved to dismiss count one of the indictment and the state moved to amend count one to reflect that defendant was guilty of at-tempted second-degree murder by attempting to commit an intentional act.

The court denied the motion to dismiss and granted the motion to amend to conform to the evidence presented at trial. However, the court permitted both counsel to present additional closing arguments to the jury regarding the appropriate mental state at issue. The court then gave a jury instruction which effectively amended count one. On appeal, defendant argues the court abused its discretion in amending the indictment to conform to the evidence. The state argues defendant was precluded from raising the issue and in any event, the amendment was proper. We agree with the state.

■ The trial court has considerable discretion in resolving motions to amend an indictment. *State v. Sammons,* 156 Ariz. 51, 54, 749 P.2d 1372, 1375 (1988). Rule 13.5, Arizona Rules of Criminal Procedure, governs amendments to and defects in charging documents. Under Rule 13.5(b):

> The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

Rule 13.5(c), Arizona Rules of Criminal Procedure, provides that "No issue concerning a defect in the charging document shall be raised other than by a motion filed in accordance with Rule 16." The comment to Rule 13.5(c) states:

> This provision makes any defects harmless error unless timely raised under Rule 16. This treatment is consistent with expanded pretrial discovery in the light of which the formal document is of decreased significance.

*Official Comment,* Ariz.R.Crim.P. 13.5(c).

Rule 16.1(b) provides in pertinent part that: "All motions shall be made not later than 20 days prior to trial." Rule 16.1(c) further provides that:

Any motion, defense, objection, or request not timely raised under Rule 16.-1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise or reasonable diligence could not then have been known, and the party raises it promptly upon learning of it.

[2, 3] We believe defendant is precluded from raising the issue. In this case, defendant did not make a timely motion under Rule 16 and therefore waived the right to raise it at the end of trial. *State v. Anaya,* 165 Ariz. 535, 542, 799 P.2d 876, 883 (App. 1990). Moreover, the defect was one which defendant could easily have discovered by the exercise of reasonable diligence prior to trial. *State v. Puryear,* 121 Ariz. 359, 362, 590 P.2d 475, 478 (App.1979). In any event, we do not believe defendant has been prejudiced by such amendment.

Under Rule 13.5(b), Arizona Rules of Criminal Procedure, the charging document shall be deemed amended to conform to the evidence adduced at any hearing and no motion or formal action is required. *Official Comment,* Ariz.R.Crim.P. 13.5(b). However, amending an indictment to conform to the evidence is subject to limitations to protect a defendant's constitutional rights. *State v. Phelps,* 125 Ariz. 114, 119, 608 P.2d 51, 56 (App.1979). As stated in *State v. Barber,* 133 Ariz. 572, 577, 653 P.2d 29, 34 (App.1982):

> In determining the propriety of an amendment to an indictment to conform to the evidence, this court must consider whether the allowing of that amendment would violate two important rights of the defendant, to wit: (1) the defendant must have been put on notice of the charges against him with an ample opportunity to prepare to defend against them; and (2) the acquittal of the amended charge must provide a double jeopardy defense to a subsequent prosecution on the original charge.

Under the facts of this case, the amendment to conform to the evidence was not improper. Because of extensive discovery, defendant had adequate notice of the act with which he was charged and had an opportunity to prepare and defend against

it. *State v. Woodall,* 155 Ariz. 1, 744 P.2d 732 (App.1987). Further, there is nothing in the record to suggest that defendant lacked notice of the applicable mens rea. *State v. Winter,* 146 Ariz. 461, 706 P.2d 1228 (App.1985).

Defendant does not argue that the state's proof at trial was at variance with the evidence presented to the grand jury or that he had no notice of the evidence to be presented at trial. *State v. Barnett,* 173 Ariz. 282, 842 P.2d 1295 (App.1991). *State v. Roscoe,* 145 Ariz. 212, 700 P.2d 1312 (1984), *cert. denied,* 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985). Thus, defendant was able to adequately prepare his insanity defense. Also, in this case, the amendment to the indictment required the state to meet a higher burden of proof. The state was required to show that defendant acted "intentionally" rather than merely "recklessly." *State v. Johnson,* 157 Ariz. 502, 759 P.2d 648 (App.1988). In this regard, defendant cannot show he was in any way misled or prejudiced by the defect. *State v. Archer,* 124 Ariz. 291, 293, 603 P.2d 918, 920 (App.1979). Finally, it is clear that defendant has a defense to subsequent prosecution under double jeopardy principles. We will not reverse the conviction on this ground.

B. *Preclusion of Defense Expert Witness*

Defendant argues that the trial court committed reversible error when it precluded a defense witness, Dr. Susan Parrish, from testifying in defendant's case-in-chief or in surrebuttal. Defendant was indicted on November 8, 1989. On January 30, 1990, counsel filed a motion to examine defendant's mental condition at the time of the offense. On April 23, 1990, defendant filed a motion to continue trial, advising the court that defendant had employed Dr. Donald Tatro as an expert witness on the issue of insanity and that additional time was needed to complete his evaluation.

On May 17, 1990, defendant filed a notice of defenses which listed insanity as a defense and named Dr. Tatro as witness in support of the defense. The state then filed its witness and evidence list, but did

not list the expert that it eventually used at trial on the issue of insanity. On June 12, 1990, the state filed a motion to allow Dr. Alexander Don to examine defendant, which motion was granted.

On July 5, 1990, the state filed a motion to continue trial because Dr. Don needed additional time to complete his report. On July 12, 1990, the state filed a motion to continue trial or in the alternative for deposition of Dr. Don because Dr. Don was scheduled to be out of the country until August 6, 1990. The court ordered that Dr. Don's deposition be taken in lieu of a continuance.

On July 16, 1990, a videotaped deposition of Dr. Don was taken by the prosecutor and defense counsel. On July 19, 1990, the date set for trial, defense counsel advised the court that she had just interviewed Dr. Don for the first time on July 16, 1990. Counsel requested a continuance until July 23, 1990, in order to explore the possibility of obtaining a rebuttal witness. She advised the court that she needed another witness, other than Dr. Tatro, because Dr. Don had criticized the evaluation techniques and methodology used by Dr. Tatro in arriving at his conclusions.

The state did not oppose a short continuance but indicated it would object to the defense calling an undisclosed rebuttal witness. The trial court granted the continuance until July 23, 1990, but indicated it would not rule on the appropriateness of defendant calling a rebuttal witness. The court also stated that if the defense sought additional rebuttal witnesses, it was to notify the state immediately.

On July 20, 1990, defense counsel advised the prosecutor that she intended to call another expert witness. Jury selection began on July 23, 1990, and although the state knew defendant intended to call a rebuttal witness, the state did not move to continue the trial. On July 26, 1990, the prosecution interviewed Dr. Susan Parrish.

After the state had presented its case-in-chief, on July 30, 1990, the prosecutor moved to preclude the testimony of Dr. Parrish. The court granted the motion on the grounds that the state did not have adequate notice of such witness and did not have an opportunity pursuant to A.R.S. section 13–3993 to have an additional expert witness appointed. Defendant moved for a continuance so the state could obtain another expert witness if it so desired but the judge denied that motion because she did not wish to delay the trial. Defendant then made an offer of proof of Dr. Parrish's testimony.

On appeal, defendant argues that the court abused its discretion in precluding Dr. Parrish from testifying. Defendant alleges he was denied his right to present witnesses in his defense in violation of the Sixth Amendment to the United States Constitution and art. II, sections 4 and 24 of the Arizona Constitution. He alleges that the court's reliance on A.R.S. section 13–3993 was erroneous and that the sanction of precluding a defense witness for nondisclosure of that witness earlier was improper.

Rules 15.2(b) and Rule 15.2(c), Arizona Rules of Criminal Procedure, require a defendant to provide the prosecutor with the names and addresses of experts that he will call at trial within 20 days after his arraignment. Rule 15.6, Arizona Rules of Criminal Procedure, imposes a continuing duty to disclose and when additional information becomes known to a party, that party must make prompt disclosure to all other parties.

■ Rule 15.7, Arizona Rules of Criminal Procedure, gives the court authority to impose sanctions for Rule 15 discovery violations including "[p]recluding a party from calling a witness, offering evidence, or raising a defense not disclosed." Ariz. R.Crim.P. 15.7(a)(4). The decision whether to impose sanctions and the choice of sanctions for a discovery violation is within the sound discretion of the trial court. *State v. Dumaine*, 162 Ariz. 392, 406, 783 P.2d 1184, 1198 (1989). Absent a showing of prejudice, the trial court's decision will not be reversed on appeal. *Id.; State v. Fisher*, 141 Ariz. 227, 246, 686 P.2d 750, 769 (1984), *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984).

■ The right to offer the testimony of witnesses, compel their attendance, and present a defense is guaranteed by the Sixth Amendment to the United States Constitution and is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *State v. Oliver*, 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988). The United States Supreme Court in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), discussed the question of whether the compulsory process clause of the Sixth Amendment is an absolute bar to a state discovery rule which permits the sanction of preclusion of witnesses for discovery violations. The Court held that the preclusion sanction does not necessarily violate the Sixth Amendment and adopted a balancing test to consider the issue. The Court stated:

> In order to reject petitioner's argument that preclusion is *never* a permissible sanction for a discovery violation it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

484 U.S. at 415, 108 S.Ct. at 656 (emphasis in original). In that case, the Supreme Court upheld the use of the preclusion sanction because the evidence indicated that defense counsel had deliberately sought a tactical advantage in failing to list a witness. The Court found this was wilful misconduct and that preclusion of the defense witness was justified to protect the integrity of the judicial process.

■ Before this decision, the Arizona courts had also applied a balancing test to determine whether a preclusion sanction was justified under the circumstances. Although this sanction is available to a trial judge, preclusion is rarely an appropriate sanction for a discovery violation. *State v. Wargo*, 145 Ariz. 589, 703 P.2d 533 (App. 1985). A witness should be precluded only as a last resort. *State v. Tucker*, 157 Ariz. 433, 440, 759 P.2d 579, 586 (1988). The commentary to the *American Bar Association Standards for Criminal Justice*, Standard 11.4–7, pp. 67–68 (1980), also indicates that the exclusion sanction is not recommended because its results are capricious. "[E]xclusion of prosecution evidence may produce a disproportionate windfall for the defendant, while exclusion of defense evidence may lead to an unfair conviction. Either result would defeat the objectives of discovery." As stated by our supreme court in *State v. (Joseph Clarence Jr.) Smith*, 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979):

> The trial court ... should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases. Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice.

(Footnotes and citations omitted.) In determining the propriety of the sanction, the court should consider (1) how vital the witness is to the case, (2) whether the opposing party will be surprised, (3) whether the discovery violation was motivated by bad faith, and (4) any other relevant circumstances. *State v. (Joe U.) Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (1984); *State v. Tucker*, 157 Ariz. at 440, 759 P.2d at 586.

In *State v. (Joe U.) Smith*, the supreme court reversed the conviction of the defendant when the trial court precluded the testimony of a defense alibi witness who appeared during the second day of trial. Applying the balancing test, the court

found the testimony was vital to the defense, and found no bad faith on the part of defense counsel. The court found the state was surprised by the witness, but determined that any prejudice could have been rectified by the granting of a continuance. *See also State v. Schrock*, 149 Ariz. 433, 436–37, 719 P.2d 1049, 1051–52 (1986) (improper to preclude two undisclosed state's witnesses from testifying since less stringent sanctions available); *Fendler v. Goldsmith*, 728 F.2d 1181, 1190 (9th Cir. 1984) (exclusion of nondisclosed defense witness who was vital to defense was improper under balancing test even though discovery violation appeared wilful). To decide this issue, therefore, it is necessary to examine each of the relevant criteria.

1. Whether witness was vital to defense.

■ Contrary to the state's position on this point, we believe this witness was vital to the defense. Dr. Tatro had examined defendant and had concluded that he had a serious personality disorder and had suffered a temporary psychosis at the time of the offense during which he may have been hallucinating. The evidence showed defendant had come from a dysfunctional family, had been suicidal and experienced visitations from a dead friend who had committed suicide. Dr. Tatro performed a Bender Visual Motor Gestalt test and found that the results were consistent with organic brain damage. He admitted that in order to obtain a more accurate diagnosis on this point, it would be necessary to perform additional psychological and physiological tests on defendant and that he had not done so. His testimony was somewhat equivocal as to whether defendant was insane under the *M'Naghten* test for insanity, applicable in Arizona. A.R.S. § 13–502(A) (1989).[2]

The deposition testimony of the state's witness, Dr. Don, indicated that he disagreed with Dr. Tatro's finding of psychosis and his diagnosis of possible organic brain damage. In this regard, he questioned the use of the Bender Visual Motor Gestalt test to determine organic brain disease since he stated it was necessary to perform a battery of tests to make a more accurate diagnosis. He testified he did not perform such tests. He agreed with Dr. Tatro's conclusion that defendant was manic-depressive and had a borderline personality disorder complicated by poly-substance abuse but did not believe defendant was *M'Naghten* insane.

In an offer of proof, Dr. Parrish testified that she performed a number of additional psychological tests beyond the one given by Dr. Tatro and concluded that defendant suffered from organic brain damage. In response to counsel's question as to defendant's mental state on the day the crimes were committed, she testified that he had great impairment in thinking and was psychotic and delusional.

This testimony was not cumulative since Dr. Parrish performed the additional diagnostic tests not done by Dr. Tatro. Also, since Dr. Don criticized Dr. Tatro's methodology in diagnosing organic brain damage, Dr. Parrish's testimony went beyond that which was offered by Dr. Tatro and was important to establish this fact. Although evidence of organic brain damage is not dispositive of the issue of insanity, it clearly is relevant to assess defendant's mental state at the time the offense was committed. *See, State v. Gonzales*, 140 Ariz. 349, 681 P.2d 1368 (1984) (psychiatric testimony of organic brain damage to show defendant's mental condition relevant to facts in dispute and must not be excluded).

2. Surprise by state.

As indicated previously, Dr. Don was not deposed until July 16, 1990. On July 19, 1990, the date originally set for trial, defense counsel advised the state and the court of the possibility of obtaining a rebuttal witness. Defense counsel notified the

---

**2.** A.R.S. section 13–502(A) provides:

A person is not responsible for criminal conduct by reason of insanity if at the time of such conduct the person was suffering from such a mental disease or defect as to know the nature and quality of the act or, if such person did know, that such person did not know that what he was doing was wrong.

state on July 20, 1990, that it intended to use a rebuttal witness. On July 23, 1990, the date set for trial, the state could have, but did not move to continue the trial to have time to find an additional expert witness or to wait until Dr. Don returned to town to review the rebuttal witnesses' testimony. The state interviewed Dr. Parrish on July 26, 1990, during presentation of its case-in-chief. Although there may have been some surprise to the state of· the existence of the rebuttal witness on July 19, 1990, the state cannot legitimately claim surprise as of the date the trial began. Moreover, the delay in disclosing a rebuttal witness was in large part caused by the state's late disclosure of its expert witness and the witness's delay in examining defendant and preparing a report. In our opinion, this factor makes the element of surprise less significant.

### 3. Bad faith by defense counsel.

Contrary to the state's assertion, there is no evidence of bad faith or wilful misconduct by defense counsel in the record. Because of the state's late disclosure of its expert witness, pretrial discovery as to the witness's testimony was not complete until three days before trial. As soon as defense counsel became aware of the necessity of calling another expert witness, she took immediate steps to find such witness and promptly notified the state of the name and address of the witness in accordance with Rule 15.6 and the court's order. Although one might argue that defense counsel should have anticipated the necessity of calling an additional expert to bolster any incomplete conclusions reached by Dr. Tatro, we would hardly find this shortcoming, if it is one, to constitute bad faith or wilful misconduct.

4. Less stringent sanctions and prejudice to state.

The court granted the motion to preclude the witness in part because of the applicability of A.R.S. section 13–3993. That statute gives the state the right in any case in which defendant invokes the insanity defense to "nominate and have appointed for examination of the Defendant to determine the Defendant's mental state the same number of medical doctors and licensed psychologists that will testify on behalf of the defense." When defendant moved to continue the trial for approximately a week so the state could seek an additional expert witness, the state objected. Because the trial judge did not wish to delay the trial, she denied the motion to continue. Defendant argues that a continuance would have been more appropriate. We agree.[3]

In this case, the state indicated that it did not desire to seek an additional expert witness. In opposing the motion to continue, the prosecutor told the court:

Judge, we are in the middle of the trial. I've rested. Voir dire was made clear to the jury about how long this case would last. I'm not sure if any of the jurors that are remaining have scheduling conflicts or not. However, even if there is no problem with that, the State has—at this time I don't have to go out and fine [sic] another expert to contradict what the defendant might say with the second.

We have an expert. We are satisfied with our expert. We have faith in his experties [sic]. And under the circumstances of this case, I ask that any request for continuance at this point be denied.

Given that the state indicated it intended to waive its rights pursuant to A.R.S. section

---

**3.** Defendant argues that the court misconstrued A.R.S. section 13–3993 claiming that the statute only gives the state the right to have an equal number of experts appointed, but does not require that the state call the same number of witnesses at trial. He also claims that the statute conflicts with Rule 11.3(f), Arizona Rules of Criminal Procedure, which grants the court power to appoint additional experts to examine Defendant if necessary. We think it unneces-

sary to decide if the statute and rule conflict since Rule 11.3(f) does not apply in this case. Furthermore, the trial court correctly observed that A.R.S. section 13–3993 requires that the state have an "adequate opportunity to then hire and provide the opportunity of a fourth expert to present." The court did not find that the state was required to actually hire and call another expert witness.

13–3993, it is difficult to justify the court's actions in precluding the second expert witness. We believe the trial court could have granted a brief continuance so the state could prepare for cross-examination of Dr. Parrish and, if necessary, continue the trial until August 6, 1990, when the state's expert witness would be available. Although there would have been some prejudice to the state in permitting the witness to testify, we do not think that prejudice to the state outweighs defendant's sixth amendment right to present a defense. This is particularly true in this case since defendant had the burden of proving insanity by clear and convincing evidence. A.R.S. § 13–502(B); *State v. Fletcher*, 149 Ariz. 187, 717 P.2d 866 (1986). Under the circumstances of this case, we find it was error to preclude the defense expert from testifying.

■ Such an error is subject to a harmless error analysis. To establish a sixth amendment violation, the defendant must show that the evidence was material to the defense. *State v. Fuller*, 143 Ariz. 571, 574, 694 P.2d 1185 (1985); *State v. Wargo*, 145 Ariz. at 589, 703 P.2d at 533. As stated above, we believe Dr. Parrish's testimony was material to the defense. Although Dr. Parrish did not give a precise opinion on the ultimate issue of defendant's sanity, her testimony could clearly lead a reasonable juror to conclude that because of defendant's disease, he was so impaired at the time he committed the offense that he did not know the nature and quality of his act and did not know right from wrong. We do not believe the error was harmless. Because of our resolution of this issue, we need not address the remaining issues raised by defendant.

## V. CONCLUSION

We reverse defendant's convictions and sentences and remand this matter for a new trial in accordance with this decision.

GRANT, P.J., and CONTRERAS, J., concur.