STATE OF NORTH CAROLINA v. MARION PRESTON GILLESPIE

No. COA05-1182

(Filed 19 December 2006)

**1. Appeal and Error— issue not argued in brief—deemed abandoned**

The denial of a motion to continue was deemed abandoned on appeal where it was not argued in the brief. Moreover, the court had granted a three month continuance and did not abuse its discretion by refusing another.

**2. Criminal Law— diminished capacity defense—information required to be provided—sanction—exclusion of evidence**

The trial erred in entering a sanction totally excluding evidence of defendant's mental health experts in a first-degree murder prosecution, and this error was prejudicial. A defendant must provide notice of intent to offer a defense of insanity or diminished capacity, and must provide specific information about the nature and extent of the insanity defense, but is not required to provide specific information about diminished capacity.

**3. Criminal Law— discovery—production of mental health reports—no violation**

The absence of a timely written order requiring production of the reports of defendant's mental health experts in a murder prosecution belies the trial court's conclusion of law that defendant violated a discovery order.

**4. Criminal Law— discovery—mental health defense—cooperation of defense experts with State experts**

The trial court acted under a misapprehension of the law regarding the role of and the requirements of defense expert witnesses when it found that defense experts in a murder case intentionally and inexcusably refused to cooperate with Dorothea Dix staff and excluded defendant's mental health defense. The only responsibility imposed by N.C.G.S. § 15A-905(c)(2) is to prepare a report, which must be supplied to the State; nothing requires that defendant's experts supply other information or records directly to the State, much less a state agency.

STATE v. GILLESPIE

[180 N.C. App. 514 (2006)]

Appeal by defendant from judgment entered 8 December 2004 by Judge W. Erwin Spainhour in Rowan County Superior Court. Heard in the Court of Appeals 19 April 2006.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

JACKSON, Judge.

In June 2003, Marion Preston Gillespie ("defendant") and Linda Faye Smith Patterson ("the victim") resided together and were in a dating relationship. During that time, defendant was unemployed, battling liver disease and diabetes, and taking Peg Interferon, a medication for hepatitis C with severe side effects.[1]

Early in the morning on 15 June 2003, while at their residence, defendant and the victim began arguing about money. During the argument, the victim grabbed a knife from the top of the commode in the bathroom, and she charged at defendant. Defendant took the knife from the victim and began cutting her with it.

At approximately 4:20 a.m., defendant arrived at the Rowan County Sheriff's Department in bloodstained clothes. Defendant approached Deputy Bradley Bebber ("Deputy Bebber") and told Deputy Bebber that he had been in a fight with his girlfriend at 640 Knox School Road and that he wanted to turn himself in. Deputy

___

1. Defendant's mental health expert Dr. Nathan Strahl testified on *voir dire* that "Peg Interferon . . . induces depression, agitation, irritability, anxiety, psychosis, [and] violent behavior directed toward self or potentially towards others." Dr. Strahl testified that, after beginning taking Peg Interferon, defendant suffered from crying spells, had poor concentration and low energy, and became increasingly depressed, lethargic, volatile, anxious, and irritable. Dr. Strahl concluded that: (1) at the time of the assault, defendant was depressed; (2) the depression was induced by Peg Interferon; and (3) because of the side effect of inducing depression, psychosis, and agitation, defendant was not as in control as he would have been had he not been on the Peg Interferon. Dr. Strahl concluded with a reasonable degree of medical certainty that "[defendant] could not apply the rules of right and wrong to his behavior . . . [and that] [h]e was out of control." Furthermore, Dr. Strahl believed that defendant was not able to premeditate or deliberate his actions.

In addition to Dr. Strahl's testimony, Dr. Jerry Noble testified on *voir dire* that Peg Interferon was a factor in causing defendant's depression and violent behavior and that defendant was involuntarily intoxicated during the assault. Furthermore, Dr. Noble testified that the effects of Peg Interferon negated the argument that defendant acted with malice. Finally, Dr. Noble testified, based on his expert medical opinion, that defendant did not know right from wrong or the nature of his acts at the time of the offense.

Bebber called 911 and reported the incident and the address defendant provided.

In response to the 911 dispatch, Officer Gerald Jones ("Officer Jones") arrived at 640 Knox School Road. Officer Jones entered the residence and found the deceased victim lying on her side in the bathtub. Officer Jones testified at trial that there was a lot of blood in the bathtub and on the wall area around the bathtub. Officer Jones found a knife on the edge of the bathtub.

Officers escorted defendant to the sheriff's department, and once inside, officers advised defendant of his *Miranda* rights. Defendant then consented to a search of his car and his residence at 640 Knox School Road. After it was confirmed that the victim was deceased, defendant was charged with murder. Defendant requested to speak with Sheriff George Wilhelm ("Sheriff Wilhelm"). Sheriff Wilhelm re-read defendant his rights, and defendant waived his rights and gave a statement.

On 23 June 2003, a grand jury indicted defendant for murder. Initially, the case was to be tried capitally, but on 1 March 2004, the State elected to try the case non-capitally. On 6 July 2004, the trial court scheduled defendant's trial for 29 November 2004.

On 14 October 2004, pursuant to North Carolina General Statutes, section 15A-959, defendant provided the State with notice of his intent to introduce a mental health defense—specifically, insanity and diminished capacity. On 21 October 2004, the trial court committed defendant to Dorothea Dix Hospital and ordered Dorothea Dix Hospital to examine defendant's mental capacity to stand trial and his mental health at the time of the offense. The trial court further ordered defendant to provide notice of defenses, expert witnesses, and a witness list to the State and also to produce documentation for the expert witnesses by 15 November 2004. The trial court, however, failed to include this date in its written order. On 17 November 2004, defendant filed a motion for continuance on the bases that defense counsel continued to receive discovery documents from the district attorney, neither the State nor defense counsel had received any reports from Dorothea Dix Hospital or any other experts, and defense counsel needed defendant to be returned from Dorothea Dix Hospital to Rowan County Detention Center to help prepare defendant's case for trial. On 23 November 2004, defendant filed another motion for continuance because defendant still had not been returned to Rowan County Detention Center and defense counsel continued to receive

discovery from the district attorney's office. The trial court denied the motion for continuance on 29 November 2004.

On 22 November 2004, Charles Vance, M.D., Ph.D., Forensic Psychiatrist with Dorothea Dix Hospital, sent a letter to the Rowan County Clerk of Court stating that "[t]he medical staff of the Forensic Psychiatry Division has completed their forensic evaluation and observation of [defendant] and found him to be capable to proceed to trial." However, neither Dr. Charles Vance nor the staff at Dorothea Dix Hospital provided a report of defendant's mental health at the time of the offense. On 24 November 2004, defense counsel delivered defendant's psychological evaluation prepared by Dr. Noble to the State. On 25 November 2004, defendant's psychiatric evaluation prepared by Dr. Strahl was made available to the State, and defense counsel delivered it to the State on 29 November 2004.

On 29 November 2004, the trial court entered an order prohibiting defendant from introducing evidence at trial from Dr. Noble or Dr. Strahl concerning a mental health defense. Although defense counsel attempted to make an offer of proof of Dr. Noble's and Dr. Strahl's prohibited testimony before opening statements at trial, the trial court allowed *voir dire* for Dr. Noble and Dr. Strahl after the close of the evidence. The *voir dire* testimony provided that: (1) defendant's taking Peg Interferon caused defendant to become severely depressed; (2) at the time of the attack, defendant did not know right from wrong; (3) he did not premeditate or deliberate before the killing; (4) the killing was without malice; and (5) defendant was involuntarily intoxicated during the attack. On 8 December 2004, the jury returned a verdict, finding defendant guilty of first-degree murder. The trial court sentenced defendant to life imprisonment without parole. Defendant now appeals to this Court.

[1] We note first that defendant has not appealed the denial of his motions to continue, even though defendant assigned as error the court's denial of his motion for a continuance to allow time for the mental health experts and defendant's counsel to obtain all necessary information. Our Supreme Court has held that "[a] motion for a continuance is ordinarily addressed to the sound discretion of the trial court. Therefore, the ruling is not reversible on appeal absent an abuse of discretion." *State v. Smith*, 310 N.C. 108, 111, 310 S.E.2d 320, 323 (1984). In the instant case, defense counsel informed the State that he could not be ready for trial by August, and accordingly, the trial court scheduled the trial for 29 November 2004. The court thus granted defense counsel a three-month continuance, and based on

the record, we cannot find that the trial court abused its discretion in refusing to grant any further continuances. Regardless, defendant has not argued this issue in his brief, and accordingly, this assignment of error is deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2006).

**[2]** On appeal, defendant argues that the trial court erred in precluding the testimony of Dr. Noble and Dr. Strahl as a sanction for ·purported discovery violations and that, consequently, the trial court deprived defendant of his due process right to present a defense pursuant to *Taylor v. Illinois*, 484 U.S. 400, 98 L. Ed. 2d 798 (1988). Much as in *Taylor*, defendant has asserted only a due process violation, but nevertheless, his reliance on the Sixth Amendment and the Compulsory Process Clause is evident from his citations and legal arguments. *See Taylor*, 484 U.S. at 406 n.9, 98 L. Ed. 2d at 809. The Supreme Court explained in *Taylor* that its broad interpretation of the Compulsory Process Clause is "reflected in contemporaneous state constitutional provisions," *id.* at 408, 98 L. Ed. 2d at 809, and the Court referenced the North Carolina Constitution, noting that "North Carolina combined the right to put on a defense with the right of confrontation, guaranteeing the right 'to confront the accusers and witnesses with other testimony.'" *Id.* at n.13, 98 L. Ed. 2d at 809 (quoting N.C. Const. art. I, § 23). Accordingly, we review defendant's constitutional arguments on Sixth Amendment and state constitutional grounds.

North Carolina General Statutes, section 15A-910 provides for sanctions for discovery violations. *See* N.C. Gen. Stat. § 15A-910 (2005). Specifically, if the trial court determines that a party has failed to comply with the statutory provisions governing discovery or an order entered pursuant to the discovery statutes, the court may exercise its contempt powers and/or:

(1)   Order the party to permit the discovery or inspection, or

(2)   Grant a continuance or recess, or

(3)   Prohibit the party from introducing evidence not disclosed, or

(3a)  Declare a mistrial, or

(3b)  Dismiss the charge, with or without prejudice, or

(4)   Enter other appropriate orders.

N.C. Gen. Stat. § 15A-910(a) (2005).

It is well-established that "[t]he choice of sanction, if any, rests within the [sound] discretion of the trial court." *State v. Browning*, 321 N.C. 535, 539, 364 S.E.2d 376, 378 (1988). A decision about discovery sanctions will be reversed only for an abuse of discretion, which "occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *State v. Moore*, 152 N.C. App. 156, 161, 566 S.E.2d 713, 716 (2002) (citations and internal quotation marks omitted).

The United States Supreme Court addressed the issue of whether the refusal to allow an undisclosed witness to testify violated the petitioner's constitutional right to obtain the testimony of favorable witnesses in *Taylor v. Illinois*, 484 U.S. 400, 98 L. Ed. 2d 798. In *Taylor*, the United States Supreme Court stated that " 'criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.' " *Taylor*, 484 U.S. at 408, 98 L. Ed. 2d at 810 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 94 L. Ed. 2d 40, 56 (1987)). "Few rights are more fundamental than that of an accused to present witnesses in his own defense. Indeed, this right is an essential attribute of the adversary system itself." *Id.* (internal citation omitted).

The Court reasoned that "[i]n order to reject petitioner's argument that preclusion is *never* a permissible sanction for a discovery violation it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case." *Taylor*, 484 U.S. at 414, 98 L. Ed. 2d at 814 (emphasis in original). The Court further noted that "[i]t is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests." *Id.* at 414, 98 L. Ed. 2d at 814.

The First Circuit, interpreting *Taylor*, stated that

[a]lthough the *Taylor* Court declined to cast a mechanical standard to govern all possible cases, it established that, as a general matter, the trial judge (in deciding which sanction to impose) must weigh the defendant's right to compulsory process against the countervailing public interests: (1) the integrity of the adversary process, (2) the interest in the fair and efficient administra-

tion of justice, and (3) the potential prejudice to the truth-determining function of the trial process.

*Chappee v. Vose*, 843 F.2d 25, 29 (1st Cir. 1988) (citing *Taylor*, 484 U.S. at 414-15, 98 L. Ed. 2d at 814). The balancing test does not end there, however, as "[t]he judge should also factor into the mix the nature of the explanation given for the party's failure seasonably to abide by the discovery request, the willfulness *vel non* of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought." *Id.* (citing *Taylor*, 484 U.S. at 415-16, 98 L. Ed. 2d at 814-15). Ultimately, "[a]pplication of the *Taylor* factors is a legal question which we review *de novo*." *United States v. Levy-Cordero*, 67 F.3d 1002, 1013 (1st Cir. 1995), *cert. denied sub nom. Forty-Estremera v. United States*, 517 U.S. 1162, 134 L. Ed. 2d 659 (1996).

First, defendant argues that the trial court erred by excluding his mental health defense via Conclusion of Law number 1, which states:

1. The notice provided by the defendant to the State on 14 October 2004 that the defendant intended to introduce a mental health defense violated the provisions of N.C. Gen. Stat. § 905(c)(1)(b) in that it did not contain specific information as to the nature and extent of the defense.

North Carolina General Statutes, section 15A-905 provides that a defendant must provide the State with notice of his intent to offer at trial, *inter alia*, the defense of insanity or diminished capacity. N.C. Gen. Stat. § 15A-905(c)(1) (2005). In addition, a defendant must provide specific information with respect to the nature and extent of the defense of insanity. *See* N.C. Gen. Stat. § 15A-905(c)(1)(b) (2005). The statute, however, does not require a defendant to provide specific information with respect to diminished capacity.

Here, defendant correctly argued that he was not required to provide specific information with respect to diminished capacity, and we hold that the trial court erred in entering a finding of fact and conclusion of law that defendant failed to provide such specific information, because defendant was not required pursuant to any court order or discovery rule to provide specific information with regard to diminished capacity.

[3] Next, defendant asserts that the trial court erred by excluding his mental health defense when it entered Conclusions of Law numbers 2 and 3, which state:

STATE v. GILLESPIE

[180 N.C. App. 514 (2006)]

2. The failure of the defendant to deliver to the State, in a timely manner, the reports of mental health experts whom he expects to call as witnesses at trial violated the provisions of N.C. Gen. Stat. § 15A-905 and violated the Order of this court entered on 21 October 2004 in response to the State's Motion for Discovery.

3. This court should enter an Order pursuant to N.C. Gen. Stat. § 15A-910(3) prohibiting the defendant from introducing evidence at trial as to a mental health defense using the testimony of Drs. Stahl [sic] and Noble in that such evidence was not disclosed to the State in a timely manner, but instead was disclosed at a time so as to effectively prohibit the State from evaluating such evidence and preparing rebuttal evidence.

The trial court stated on 21 October 2004 that expert witness reports shall be submitted "and all that to be complied with by November 15." Although the requirement for defense counsel to produce the reports by 15 November 2004 was stated during the hearing, it is well-established that " '[e]ntry' of an order occurs when it is reduced to writing, signed by the trial court, and filed with the clerk of court." *State v. Gary*, 132 N.C. App. 40, 42, 510 S.E.2d 387, 388, *cert. denied*, 350 N.C. 312, 535 S.E.2d 35 (1999); *see also S. Furniture Hardware, Inc. v. Branch Banking & Trust Co.*, 136 N.C. App. 695, 702, 526 S.E.2d 197, 201 (2000) ("When an oral order is not reduced to writing, it is non-existent . . . ." (citing *Gary*, 132 N.C. App. at 42, 510 S.E.2d at 388)). In addition to its oral order, the trial court endorsed the State's motion and noted that the motion was "Allowed. 21 Oct. 2004." The motion, however, did not identify any deadline for producing the reports. Similarly, the written order granting the motion failed to require production of the reports by 15 November 2004 or any other deadline. In fact, the written Order for Defendant to Provide Notice of Defenses, Expert Witnesses and Witness List was not signed by the trial court and filed with the clerk of court until 8 December 2004, ten days after the trial court ordered the sanction at the heart of the instant appeal. The absence of a timely written order requiring production of the reports of defendant's mental health experts belies the trial court's conclusion of law that defendant "violated the Order of this court entered on 21 October 2004."

Furthermore, the trial court ordered on 21 October 2004 for the *State* to provide an examination of both defendant's mental health at the time of the offense and his mental capacity for trial. The State's report by staff at Dorothea Dix Hospital, which provided that defendant was competent to stand trial, was not written until 22 November

2004, and therefore, the State similarly failed to produce its reports by 15 November 2004. Subsequently, Dr. Strahl's psychiatric evaluation of defendant was available 25 November 2004 and delivered 29 November 2004, and Dr. Noble's psychological evaluation of defendant was delivered 24 November 2004. On 29 November 2004, the trial date, both defense counsel and the prosecutor argued that Dr. Noble, Dr. Strahl, and the staff at Dorothea Dix Hospital did not cooperate with each other and did not provide or receive sufficient and complete information to form an opinion as to defendant's mental health at the time of the attack. We hold that defendant did not violate a court order requiring the production of the mental health experts' opinions within a specified time, and accordingly, we hold that the trial court erred in entering Conclusions of Law numbers 2 and 3.

**[4]** Finally, defendant argues that the trial court erred by excluding his mental health defense pursuant to Conclusion of Law number 4, which states:

> 4. This court has carefully considered the appropriate action to take regarding this matter, including the alternatives specified in N.C. Gen. Stat. § 15A-910, and has concluded that the following is the only reasonable and appropriate ruling under the circumstances found by the court in this case. The court is mindful of the fact that the contempt powers of the court are available, but the remedy hereinafter ordered is found to be more appropriate. Inasmush as the case previously was continued from a previous term of court to accommodate the defendant, and a further delay in trial is not in the best interests of justice, the court has concluded that the case should not be continued again. The defendant should not be permitted to compel the court to continue the case from the 29 November 2004 session because of the failure of the defendant to obey the discovery statutes and the Order of this court of 21 October 2004 and *the intentional, inexcusable conduct of the defendant's mental health witnesses*. The remaining remedies set forth in N.C. Gen. Stat. § 15A-910 have been considered by the court and rejected as inappropriate.

(Emphasis added). An essential basis of the trial court's ruling was its finding that "[t]he refusal of the defendant's mental health expert witnesses to cooperate with the staff at Dorothea Dix Hospital in fully evaluating the defendant's mental condition was inexcusable, intentional and without just cause." The record shows that Dorothea Dix staff requested that the defense experts produce not

only their own medical records concerning defendant, but also records of other health care providers that were purportedly in the experts' possession.

Although the trial court appeared to acknowledge that federal law limited the experts' ability to comply with the Dix staff's requests for records obtained from third party providers, it reasoned that defendant's expert witnesses acted inappropriately by failing to obtain a written consent from defendant that would have authorized them to comply with the Dix staff's requests. The court's order condemning the experts, however, essentially mandates that defendant's expert witnesses seek out and obtain the necessary consent and then supply records directly to Dorothea Dix staff. There is no authority to support such an order.

North Carolina General Statutes, section 15A-905 requires that the trial court order the defendant, upon motion of the State, to make certain types of disclosures if the court has granted the defendant discovery pursuant to section 15A-903. N.C. Gen. Stat. § 15A-905 (2005). Specifically, section 15A-905(b) requires the court to

> order *the defendant* to permit the State to inspect and copy or photograph results or reports of physical or mental examinations . . ., or copies thereof, *within the possession and control of the defendant* which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial, when the results or reports relate to his testimony.

N.C. Gen. Stat. § 15A-905(b) (2005) (emphases added). Section 905(c) further requires the trial court to compel the defendant to

> [g]ive notice to the State of any expert witnesses that the defendant reasonably expects to call as a witness at trial. Each such witness shall prepare, *and the defendant shall furnish to the State,* a report of the results of the examinations or tests conducted by the expert.

N.C. Gen. Stat. § 15A-905(c)(2) (2005) (emphasis added). Thus, the only responsibility imposed by this statute on an expert witness is to prepare a report. This report, in turn, must be supplied by the defendant to the State. Nothing in this or any other statute requires that a defendant's expert witness supply any other information or records purportedly relied upon by defendant's expert witnesses directly to the State, much less a state agency such as Dorothea Dix.

Furthermore, there is no authority for sanctioning defendant or chastising defendant's experts for failing to comply with Dorothea Dix staff's requests, at least in the absence of a court order. Our Supreme Court has explained the limited rights of discovery in criminal cases and has held that those rights cannot be expanded pre-trial by a trial court. *See, e.g., State v. Warren*, 347 N.C. 309, 324, 492 S.E.2d 609, 617 (1997) ("Although North Carolina's discovery statutes permit the State to discover some of a defendant's documents, they do not authorize discovery of the [nontestifying expert's] report at issue."). Regardless, the trial court never ordered defendant or defendant's expert witnesses to produce the records or any other information to the State or Dorothea Dix. The only order relating to medical records was addressed directly to third party health care providers and "ordered that the following medical providers shall provide copies of [their] medical records" to both the district attorney and defense counsel. If members of the Dorothea Dix staff were unable to evaluate defendant's mental state at the time of the offense without reviewing additional medical records, they should have informed the trial court and obtained an order requiring delivery of those records. There is no basis, however, for the Dix staff to blame its inability to reach a conclusion on defendant's state of mind at the time of the offense on defendant's expert witnesses' failing to cooperate with the Dix staff by failing to deliver privileged third party medical records.

Accordingly, in making its finding that the defense experts intentionally and inexcusably refused to cooperate with Dorothea Dix staff, the trial court operated under a misapprehension of the law regarding the role of and requirements upon defense expert witnesses. No statute or caselaw requires defense expert witnesses to cooperate with the State or state agencies, such as Dorothea Dix Hospital, and, indeed, the State acknowledged as much during oral argument. Furthermore, requiring defense experts to respond to requests of Dorothea Dix staff, a state agency, risks improper government interference with the defense. In sum, we have found no case or statute requiring such cooperation, and we decline to impose such a requirement in the instant case. The trial court's conclusion, therefore, was entered in error.

"The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the oppo-

nent's case." *Taylor*, 484 U.S. at 410-11, 98 L. Ed. 2d at 811. "[J]ustice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information," *State v. Cromlish*, 780 A.2d 486, 489 (N.H. 2001), and this Court recognizes that "[t]he trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." *Taylor*, 484 U.S. at 411, 98 L. Ed. 2d at 811. Nevertheless, it must be remembered that "the purpose of discovery under our statutes is *to protect the defendant* from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990) (emphasis added), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991); *accord State v. Thomas*, 291 N.C. 687, 692, 231 S.E.2d 585, 588 (1977) ("[T]he rules of discovery contained in the Criminal Procedure Act were enacted by the General Assembly to ensure, insofar as possible, that defendants receive a fair trial and not be taken by surprise.").

Such legislative intent, however, does not give defendants *carte blanche* to violate discovery orders, but rather, defendants and defense counsel both must act in good faith, just as is required of their counterparts representing the State. *See State v. McClintick*, 315 N.C. 649, 662, 340 S.E.2d 41, 49 (1986) (noting that "discretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the state in its noncompliance with the discovery requirements.").

Analyzing the case *sub judice* within the framework of the *Taylor* factors, the record lacks evidence that defendant's omission was willful or motivated by a desire to gain a tactical advantage because defendant's mental health experts continuously tried to obtain information to complete their reports. Additionally, the record indicates that the State also did not comply with the 15 November 2004 deadline provided in the trial court's 21 October 2004 oral order, and thus, the State cannot argue that it was prejudiced by the delay in receiving the reports of defendant's mental health experts. Because of the reasons discussed *supra*, the trial court improperly denied defendant's Sixth Amendment and state constitutional right to obtain the testimony of favorable witnesses by prohibiting his mental health defense.

Our decision in this case is in accord with other jurisdictions that have addressed the *Taylor* decision and the relationship between discovery sanctions and a defendant's constitutional right to present a defense. For example, under similar facts, the Court of Appeals of

Arizona reversed a defendant's convictions. *See State v. Delgado*, 848 P.2d 337 (Ariz. Ct. App. 1993). There, the trial court precluded a defense expert from testifying on the ground that the expert was identified only a few days prior to trial. *See id.* at 341. Noting the severity of the sanction, the Arizona Court of Appeals stated that

> [t]he trial court could have granted a brief continuance so the state could prepare for cross-examination of [the defense expert] and, if necessary, continue the trial . . . . Although there would have been some prejudice to the state in permitting the witness to testify, we do not think that prejudice to the state outweighs defendant's sixth amendment right to present a defense. *This is particularly true in this case since defendant had the burden of proving insanity* by clear and convincing evidence.

*Id.* at 345 (emphasis added). The Arizona court further noted that although "[s]uch an error is subject to a harmless error analysis," the expert's testimony was vital in establishing defendant's alleged insanity at the time of the crime, and thus, the error was not harmless. *Id.*; *compare id.* (finding the error was not harmless), *and State v. Harris*, 979 P.2d 1201, 1205 (Idaho 1999) (same), *with United States v. Harvey*, 117 F.3d 1044, 1048 (7th Cir. 1997) (finding the error was harmless), *and United States v. Mizell*, 88 F.3d 288, 295 (5th Cir.) (same), *cert. denied*, 519 U.S. 1046, 136 L. Ed. 2d 543 (1996).

In the present case, the record is devoid of any indication that the omission was willful or done to gain a tactical advantage, and any prejudice to the State in contesting the expert testimony of Dr. Strahl and Dr. Noble was outweighed by the prejudice to defendant, particularly considering defendant had the burden of proving his diminished capacity and insanity defenses. When experts are precluded from testifying, "alternative sanctions would be 'adequate and appropriate in most cases.'" *Michigan v. Lucas*, 500 U.S. 145, 152, 114 L. Ed. 2d 205, 214 (1991) (quoting *Taylor*, 484 U.S. at 413, 98 L. Ed. 2d at 813); *see also White v. State*, 973 P.2d 306, 311 (Okla. Crim. App. 1998) ("Where the discovery violation is not willful, blatant or calculated gamesmanship, alternative sanctions are adequate and appropriate."). In the case *sub judice*, the trial court had other viable sanctions, and, indeed, "granting a continuance was an obvious, reasonable, and less drastic alternative." *People v. Richards*, 795 P.2d 1343, 1346 (Colo. Ct. App. 1989).

Accordingly, the trial court erred in entering each of its conclusions of law under the *Taylor* factors and the trial court's error was

not harmless. We hold on *de novo* review that the trial court acted under a misapprehension of the law by entering a sanction to totally exclude evidence of defendant's mental health experts. We also hold that the sanction prohibiting defendant's mental health defense was not harmless and is reversed. Defendant is entitled to and is awarded a new trial.

NEW TRIAL.

Judges TYSON and GEER concur.